JULIET WADE, Plaintiff-Appellant, *v.* JOHN KRAMER, Secretary, The Department of Transportation, *et al.*, Defendants-Appellees.

Fourth District   No. 4—83—0199

Opinion filed January 19, 1984.—Rehearing denied March 5, 1984.

David Lincoln Ader, of Ancel, Glink, Diamond, Murphy & Cope, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Russell R. Eggert, Assistant Attorney General, of counsel), for appellees.

JUSTICE MILLER delivered the opinion of the court:

Plaintiff filed a four-count complaint seeking injunctive relief to prohibit the construction of a highway bridge across the Illinois River

near Valley City in Pike County. Defendants filed a motion to dismiss on the ground that the complaint was "substantially insufficient in law." Judge Burrows granted the motion and dismissed the complaint on November 23, 1982. On December 23, 1982, plaintiff moved to vacate the dismissal order and sought leave to amend counts III and IV of her complaint. On February 9, 1983, the trial court refused to vacate the order and denied leave to amend counts III and IV. This appeal followed.

This action arises out of a dispute over the proposed location of a bridge over the Illinois River. The bridge is a necessary link in the proposed Central Illinois Expressway which will connect Springfield and Quincy. Plaintiff owns farmland which borders on the Pike County Conservation Area (PCCA). Defendants propose that the bridge and connecting highway will be built through a portion of the PCCA known as Napoleon Hollow.

Plaintiff appeals from the order of the trial court concerning counts III and IV. Counts I and II of her complaint are not before this court. Count III of plaintiff's complaint alleged that the construction of the proposed bridge and highway would have an adverse impact on certain endangered species of plants and animals and on archaeological sites of great significance located within the PCCA. Plaintiff alleged that the State held title to wildlife and archeological remains as trustee for the public and that the planning and construction of the highway along its proposed route was a violation of its fiduciary duty to preserve the *corpus* of the trust. Count IV alleged that the acquisition of the land for the highway and the bridge was a violation of section 4—504 of the Illinois Highway Code (Ill. Rev. Stat. 1981, ch. 121, par. 4—504), which permits the taking of State land for highway purposes only if the taking does not interfere with the use of such land by the agency controlling the land.

Defendants filed a motion to dismiss on December 1, 1981, contending that plaintiff's complaint was "substantially insufficient in law." On November 23, 1982, Judge Burrows dismissed plaintiff's complaint. In his dismissal order, Judge Burrows discussed several cases involving the public trust doctrine and then dismissed count III, stating:

> "The Court is of the opinion that Count III must be dismissed. The tests alluded to in [the] *Paepcke* case have never been implemented by a Court of Review, only cited as useful guides 'for future administrative action.' Perhaps a harbinger of a possible ruling, however, absent such, this Court is loath to impose such standards on the exercise of executive discretion.

It further appears that the policy for administrative action is the Illinois Highway Code. Count III be and it is hereby dismissed."

Judge Burrows also dismissed count IV on the ground that section 4—509 of the Illinois Highway Code (Ill. Rev. Stat. 1981, ch. 121, par. 4—509) provided "an escape hatch" from the prohibition against acquiring land held by another State agency contained in section 4—504.

A motion to vacate the dismissal order was denied on February 9, 1983. In its order denying the motion to vacate, the court stated that it was undoubtedly true that the State has a type of guardianship or trust over wildlife in the State. The court refused to intervene to monitor activities of the State affecting wildlife, however, holding that function to be better left to the executive and legislative branches of government.

We are faced with two issues on appeal: (1) whether the trial court erred in dismissing count III of plaintiff's complaint alleging a violation by the State of the public trust doctrine; and (2) whether the trial court erred in dismissing count IV of plaintiff's complaint.

The "public trust" doctrine provides that certain types of public property, for example, navigable waters, are held "in trust" by the State for the benefit of the public. The "lodestar" of the public trust doctrine in American law is *Illinois Central R.R. Co. v. Illinois* (1892), 146 U.S. 387, 36 L. Ed. 1018, 13 S. Ct. 110. In 1869 the Illinois legislature granted over 1,000 acres of submerged land extending one mile from the Chicago shoreline to the railroad in fee simple. A few years later the legislature repealed the original grant and the matter ended up in the courts. The United States Supreme Court upheld the repeal of the grant because the grant had the effect of divesting the State of its authority over the entire Chicago waterfront; in essence, the legislature had abdicated its responsibility over navigation in that portion of Lake Michigan. The court said:

"The ownership of the navigable waters of the harbor and of the lands under them is a subject of public concern to the whole people of the State. The trust with which they are held, therefore, is governmental and cannot be alienated, except in those instances mentioned of parcels used in the improvement of the interest thus held, or when parcels can be disposed of without detriment to the public interest in the lands and waters remaining." 146 U.S. 387, 455-56, 36 L. Ed. 1018, 1043, 13 S. Ct. 110, 119.

In count II of their complaint plaintiff alleges that the State is a trustee of property it owns, including wildlife and archaeological

relics, for the benefit of the citizens of this State. The State does not dispute its status as trustee for the public but does contend that it has the power and the authority to alter a particular use of the property subject to a public trust where the public interest requires such alteration. Plaintiff contends that the State, as trustee, has a duty to preserve the *corpus* of its trust and that the construction of the proposed highway and bridge through the PCCA will be a violation of that duty.

The power of the legislature over property subject to a public trust has been broadly interpreted. In *Fairbank v. Stratton* (1958), 14 Ill. 2d 307, 152 N.E.2d 569, the court upheld a lease, pursuant to statutory authorization, of submerged lands in Lake Michigan held by the Chicago Park District to the agency overseeing the development of McCormick Place. The court held that property of a municipal corporation or political subdivision not restricted or dedicated to a particular use was subject to the will of the legislature. The planned facility was in the public interest and had been approved by the proper authorities. Therefore, no violation of the public trust over submerged lands had occurred.

The court used even stronger language in outlining the legislature's power over property held by the State in *People v. Illinois Toll Highway Com.* (1954), 3 Ill. 2d 218, 120 N.E.2d 35. The court upheld the Toll Highways Act against a claim that the act authorized acquisition of land of other State agencies contrary to provisions of the Illinois Constitution. The court said:

> "The legislative power to transfer property from one public use to another seems to be sustained by the authorities. Property devoted to the public use may be taken by authority of the legislature for a different public use, even if the earlier enterprise is thereby wholly destroyed. (18 Am. Jur. 719, Eminent Domain, sec. 93.)" 3 Ill. 2d 218, 234, 120 N.E.2d 35, 44.

In *Paepcke v. Public Building Com.* (1970), 46 Ill. 2d 330, 263 N.E.2d 11, the court discussed the public trust doctrine and the power of the State to divert trust property to new and different uses. *Paepcke* involved a suit to enjoin the construction of public schools in certain city parks. The court quoted extensively from an article by Professor Joseph L. Sax in the Michigan Law Review, *The Public Trust Doctrine in Natural Resource Law: Effective Judicial Intervention*, 68 Mich. L. Rev. 471 (1970). The court quoted Professor Sax on the question of whether certain allocations of resources made by a State should be deemed irrevocable:

> " 'To accept such claims of property rights would be to prohibit the government from ever accommodating new public needs by

reallocating resources. Certainly any such notion strikes at the very essence of governmental power, and acceptance of such a theory by a court would be as unwise as it is unlikely. It is important to recognize that the assertion of a taking is not a mere claim to compensation, for the objectors do not want cash; rather, it is a claim that when a resource is dedicated to public use, that dedication is irrevocable. However strongly one might feel about the present imbalance in resource allocation, it hardly seems sensible to ask for a freezing of any future configuration of policy judgments, for that result would seriously hamper the government's attempts to cope with the problems caused by changes in the needs and desires of the citizenry.' " 46 Ill. 2d 330, 337, 263 N.E.2d 11, 16.

The court went on to say that an assertion that the legislature could never change or reallocate the use of trust property would be contrary to well-established precedent. The court found that adequate legislative authorization existed to support the change in the use of the property.

In the case at bar, the State, through legislation passed by the General Assembly, has concluded that a highway connecting Quincy and Springfield is necessary for the public good. The legislature authorized the Department of Transportation (DOT) to select a site for this highway. In order to reach Quincy, it is necessary to cross the Illinois River at some point. DOT has determined that the most advantageous point for the construction of the bridge is in a portion of the PCCA.

■ The legislature and DOT have determined that the benefits flowing to the citizens of this State, especially those in the western portion of the State, from the construction of a new highway outweigh the potential damage to the PCCA and the wildlife and archaeological remains therein. The case law indicates that the legislature may reallocate property from one public purpose to another without violating the public trust doctrine. See, *e.g.*, *Paepcke*.

■ Plaintiff argues that the court erred by denying her a hearing on the merits of her complaint. Not every case which alleges a breach of the public trust doctrine requires a hearing on the merits. In *Paepcke*, the case came to the supreme court following a dismissal of the complaint by the trial court. The supreme court affirmed the dismissal. In *Young v. Public Building Com.* (1972), 5 Ill. App. 3d 892, 284 N.E.2d 485, the appellate court upheld the dismissal of a complaint for a temporary injunction prohibiting the demolition of the St. Clair County Courthouse. Plaintiffs alleged that the planned demoli-

tion was a violation of the public trust doctrine. Finally, in *Clement v. Chicago Park District* (1983), 96 Ill. 2d 26, 449 N.E.2d 81, the supreme court affirmed the dismissal of a complaint seeking an injunction against the construction of a driving range in Jackson Park, which plaintiffs claimed was a violation of the public trust in which the park land was held. We find that the dismissal of count III of the complaint was proper.

Count IV of plaintiff's complaint was grounded on allegations that the proposed construction would interfere with the present use of the PCCA, in violation of section 4—504 of the Illinois Highway Code (Ill. Rev. Stat. 1981, ch. 121, par. 4—504), which provides:

> "Subject to the approval of the Governor and the consent of any department, board, commission, officer or other agency of the State government having control and custody of any land now or hereafter owned by the State, the Department is authorized to take and use such portion as may be deemed necessary for State highway purposes over such land, provided such taking and use by the Department does not interfere with the use of such land by the agency so having control and custody."

The trial court held that plaintiff had standing to sue to prevent a violation of section 4—504, but dismissed count IV of the complaint because the court held that section 4—504 must be read in conjunction with section 4—509 of the Illinois Highway Code (Ill. Rev. Stat. 1981, ch. 121, par. 4—509), which provides:

> "In addition to other powers of the Department, whenever it is necessary as an incident to the construction of a new State highway *** that property already devoted to a public use be acquired, and the Department and the public agency having jurisdiction over such property have entered into an agreement concerning the acquisition of such property, the Department is authorized to purchase, or to acquire through the exercise of the right of eminent domain, such easements, rights, lands or other property as may be necessary to replace the public property being acquired."

The trial court characterized section 4—509 as an "escape hatch" to the prohibition contained in section 4—504.

■ The State has argued that plaintiff does not have standing to bring an action for a violation of section 4—504 of the Illinois Highway Code. We agree. The requirements for standing to bring an action based upon the violation of a statute were outlined in *Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 748, 359 N.E.2d 1137, 1140, in which the court stated:

"Where the suit alleges injury due to violation of a statute, the doctrine of standing requires that the plaintiff be one of the class designed to be protected by the statute, or for whose benefit the statute was enacted, and to whom a duty of compliance is owed. (73 Am. Jur. 2d *Statutes* sec. 433 (1974); see *Association of Data Processing Service Organizations, Inc. v. Camp* (1970), 397 U.S. 150, 153-54, 25 L.Ed. 2d 184, 188, 90 S. Ct. 827; *Boyer v. Atchison, Topeka & Santa Fe Ry. Co.* (1st Dist. 1962), 34 Ill. App. 2d 330, 335, 181 N.E.2d 372.) The object of the statute, the nature of the duty imposed by it, and the benefits resulting from its performance dictate what persons are entitled to sue thereunder. See 73 Am. Jur. 2d *Statutes* sec. 433 (1974)."

Section 4—504 protects State agencies from undue interference resulting from State highway projects. The State has a duty to minimize or prevent such interferences, subject to the provision contained in section 4—509. The resulting benefit is the protection of the efficient functioning of State agencies against the difficulties caused when a parcel of land used by a State agency is taken for highway purposes.

The provision of the Illinois Highway Code does not confer any special benefit on plaintiff. The statute was designed to protect a State agency suffering the loss of its land for highway purposes, herein the Department of Conservation. Plaintiff has no standing to sue for violation of section 4—504 and the trial court should have dismissed count IV of the complaint on that basis.

The judgment of the circuit court of Pike County is affirmed.

Affirmed.

TRAPP and GREEN, JJ., concur.