FIRST NATIONAL BANK OF ELGIN, Trustee, *et al.*, Plaintiffs-Appellees, v. RUTH DUSOLD, Defendant-Appellant.

Second District   No. 2—88—0687

Opinion filed March 7, 1989.

Marsha J. Caporaso, of Sleepy Hollow, for appellant.

Leo M. Flanagan, Jr., and Karen J. Johnson, both of Brittain, Ketcham, Strass, Terlizzi, Flanagan, Weir & Johnson, P.C, of Elgin, for appellees.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiffs, First National Bank of Elgin as trustee under trust No. 3014 and Robert Litschewski, owners of residential real estate, brought this action for damages to the residence and various appliances and fixtures therein in breach of a warranty given by defendant, Ruth Dusold. Defendant filed a countercomplaint for alleged misrepresentation and fraud.

The trial court, without a jury, entered judgment for plaintiffs on the countercomplaint and judgment for plaintiffs on their complaint in the sum of $3,557.97 plus costs of $90.

As the parties are familiar with the history of this case and the testimony and exhibits admitted at trial, we need only set forth that evidence pertinent to resolving each of the issues raised.

In 1982, the parties entered into a contract for deed wherein plaintiffs agreed to sell and defendant agreed to buy 920 Rosewood, Carpentersville, by installment purchase. Defendant sued plaintiffs for failure to disclose defects. Plaintiffs filed a separate suit for failure of defendant to pay the installments due on the contract.

Plaintiffs and defendant entered into a settlement agreement on September 15, 1986. The agreement provided, in part, that defendant would quitclaim her interest in the premises to plaintiff Robert Litschewski. Defendant also warranted as follows:

"That all equipment and appliances to be conveyed, including but not limited to the following, are in operating condition (except that equipment relating to the swimming pool): all mechanical equipment; heating and cooling equipment, water heaters and softeners, septic, plumbing and electrical systems; kitchen equipment remaining with the premises, and any miscellaneous mechanical personal property. Dusold shall not be liable for any damages attributable or caused by a leaking roof, or electrical problems occasioned by water leaking through the roof."

The agreement further provided that defendant would move from the premises by October 1, 1986. The parties agreed to dismiss their respective lawsuits, and they were dismissed.

On October 31, 1986, plaintiffs filed this suit to recover for alleged damages to the premises. Plaintiffs' second amended complaint, upon which plaintiffs proceeded to trial, specifically alleged that defendant breached the warranties of the settlement agreement.

At trial, Litschewski testified that certain defects existed in the premises at the time he took possession and for which he incurred expenses in making repairs and replacing certain items. Litschewski testified that he took possession of the premises on October 1, 1986, and claimed damages: (1) two locks were broken, as well as the lock on the sliding glass door; (2) the garage door was separated from the framing by eight inches; (3) approximately a dozen tiles were missing in the master bath; (4) the shower door was hanging; (5) the faucets in the bathroom were leaking; (6) the medicine cabinet was hanging; (7) the linoleum was torn up in the bathroom; (8) the refrigerator would not work, was badly scratched, filthy, smelled, and "sounded like a John

Deere tractor"; (9) two of the four units on the cook top did not work, and the top was badly scratched and stained; (10) the top shelf and diffuser from the dishwasher were missing, and the prongs on the bottom shelf were bent; (11) the fan on the range hood did not operate; (12) the hinges on the oven doors were bent, the oven doors would not close, and heat was coming out of the oven; and (13) the toilet tank was cracked, the linoleum was torn up, and the medicine cabinet was hanging. The total of the bills paid by Litschewski was $7,476.05. Litschewski testified as to the repair work completed and new items purchased.

Litschewski testified that he did not believe various appliances were worth repair. Litschewski acknowledged that he had had no conversations with any repairmen about repairing any of the appliances. He made no attempt to repair any items alleged to have been defective in the master bathroom and no estimates were obtained estimating the cost of repairing any items.

Litschewski testified that he bought the house in 1986. At that time, the range hood and oven he replaced were in the premises. The refrigerator and dishwasher were first installed in the premises in 1978.

Defendant testified that when she left the premises the oven, dishwasher, refrigerator and range hood were all in operating condition. The top of the toilet tank was cracked, and one unit on the cook top stove was not working. Outside of the toilet tank, the master bathroom was in good condition. The condition of the premises was generally corroborated by Barbara Dusold, defendant's daughter, and Dr. Akhile Yeshwant, whose son took music lessons from defendant at the premises and who frequented the premises weekly, and as late as a day or two before defendant left the premises.

The trial court set forth the basis for its determination of damages:

"The only evidence that is admissible in this sort of a proceeding is evidence by a competent expert to show the fair market value at the date of the occurrence, or what the useful life of any appliance might be, or the replacement value at the time of the occurrence.

Without that expert testimony, I have to rely upon the replacement cost as exhibited in the exhibits that have been presented by the complaining witness at this time; unless you are prepared to bring in an expert today to tell me what the fair market value, having looked at it, of that particular appliance is, or what the replacement value of that particular appliance is based on date of acquisition and date of replacement."

Defendant contends that the trial court erroneously awarded damages based upon "replacement cost" of various items of personal property.

Arguing that the trial court did not apply the proper law with regard to damages, defendant contends a correct statement of the law of Illinois is found in *Trailmobile Division of Pullman, Inc. v. Higgs* (1973), 12 Ill. App. 3d 323, 325. The court in *Trailmobile* stated:

> "The measure of damages for a repairable injury to personal property is ordinarily the cost of making the repair and the value of the use of the property while the owner is necessarily deprived of it by reason of the repair. If the property is worth less after it is repaired than its value before the injury, the measure of damages is the difference in the market value before the injury and in its repaired condition in addition to the reasonable cost of repairs. Where, however, the property cannot be economically repaired the measure of damages is the difference between the market value of the property before the injury and the value of the wreckage." *Trailmobile*, 12 Ill. App. 3d at 325.

■■■ Although *Trailmobile* is a case which relates to damages for personal property occasioned by a tortious act (see *Trailmobile*, 12 Ill. App. 3d at 324), whereas the cause of action in the instant case is based on breach of warranty, we nevertheless find the damages to be awarded are similar in nature. For example, where there has been a breach of warranty of habitability, the measure of damages is the cost of repair (*Briarcliffe West Townhouse Owners Association v. Wiseman Construction Co.* (1985), 134 Ill. App. 3d 402, 411), and where there is a breach of warranty for the sale of goods, the measure of damages is the difference between the fair market value of the good as warranted and the fair market value of the good as delivered (*Griese v. Cory Pools, Ltd.* (1978), 58 Ill. App. 3d 256).

■ The burden of proof regarding the correct measure of plaintiff's damages is on the plaintiff, not the defendant, as placed by the trial court. *Reget v. Dempsey-Tegler & Co.* (1966), 70 Ill. App. 2d 32, 37.

■ In this case, Litschewski replaced all the kitchen appliances, which he claimed to be defective, with new appliances. However, no evidence was admitted as to whether any of the appliances were capable of repair or the cost of repairs. Litschewski made no attempt to repair any of the appliances. In looking at the defects in the kitchen appliances, it is possible that repairs could have been made to the appliances. The oven had a defective hinge, but was otherwise capable of heating and baking; the refrigerator had a bad smell and made a loud

noise; two burners were not functioning on the cook top, but a burner had been repaired at the time defendant took possession for $75; the dishwasher lacked trays and a diffuser; and the range hood fan was inoperative. Even if the court accepted the claim that the appliances were not repairable, lack of testimony concerning the condition and fair market value of the property at the time of delivery is fatal to any action to recover for its loss. (See *Kroch's & Brentano's, Inc. v. Barber-Colman Co.* (1973), 16 Ill. App. 3d 412, 416.) If the kitchen appliances were beyond repair, then the correct measure of damages should have been the value of these items as warranted, in 1986, less the value of the items as delivered. (See *Griese*, 58 Ill. App. 3d at 257.) In this case, none of the items were new. The oven and range hood were at least 22 years old at the time of the trial, and the refrigerator, cook top, and dishwasher were installed in the premises in 1978, at least eight years before the settlement agreement. There was no evidence of the market value of these items at the time plaintiff took possession of the premises in 1986, or their salvage value. As these appliances had already had years of service, their value, even if working as warranted, would have been substantially less than new appliances.

■■ ■ To award plaintiffs the cost of new items as replacement cost is to award plaintiffs a windfall and make them more than whole. (See *Kalal v. Goldblatt Brothers, Inc.* (1977), 53 Ill. App. 3d 109, 112.) Damages for breach of contract should only place the aggrieved party in the position he would have been in had the contract been performed. (*Kalal*, 53 Ill. App. 3d at 112.) The trial court's award puts plaintiffs in a much better position than if the contract had been performed and the appliances had been in working order. If the appliances had been in operating condition, plaintiffs still would have had a kitchen full of old appliances. Consequently, we reduce that portion of the judgment for $3,029.97 by the cost for the new appliances, $2,033.07, which leaves an amount of $996.90. Defendant has made no contention for setting aside this remaining portion of the judgment, and we therefore leave this amount intact.

Defendant next contends the miscellaneous repairs portion of the judgment in the amount of $839 is not supported by the evidence. We agree.

■■ As the parties seeking recovery, it was plaintiffs' burden to establish a reasonable basis for computation of the damages. *Briarcliffe West Townhouse Owners Association*, 134 Ill. App. 3d at 411.

The trial court in announcing its decision stated:

> "We have this bill here of $4200.00 which includes other bills that were submitted at the same time that the testimony was

presented. There are duplicates and replications. And it includes items that are outside the scope of the issues drawn by the compliant.

For that reason I am awarding $839.00 for the repairs only on that bill."

We agree with the trial court's assessment that the bill contained items outside the scope of the complaint. However, we find no evidence on which the court could have based its allocation. The bill stated the work to be done as follows:

"Repair Garage door, Replace 2 enterior [sic] doors. Replace shower door, install new towel bar in bathroom. Replace Bad Switch covers and outlet cover, Put door stops on all needed doors. Install new colored toleit [sic]. Replace glass in front door. Repair Screen in back stormdoor. Remove wallpaper 2 Baths & Kitchen one B.R. Paint, patch ceilings walls & Closets. Replace molding that's damaged in D.R. Garage & yellow bath or anywhere else necessary. Rehang doors & Repair any door frames. Replace & grout tiles in Bathroom & Shower. Sand & Stain window frames where needed. Paint vanity in blue bath, Patch & Paint Garage Walls & Ceiling[.]

Refinish Kitchen Cabinet, New Knobs & Hinges. Install new countertop (including material) Install new Kitchen Sink. Material Included. Make new cabinet doors where oven was."

We find that ceilings, walls, and wallpaper cannot in any sense be considered equipment as the term is used in the warranty. Therefore, we find that items included in the bill such as removal of wallpaper and the patching and painting of ceilings and walls could not be considered repairs for breach of warranty. Since the bill does not itemize what cost was incurred for what work, there is no way to tell what amount was incurred for work that was done because there had been a breach of warranty. Thus, the trial court had no basis before it for awarding the damages for repairs in the amount of $839.

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. The portion of the judgment for the cost of items repaired in the amount of $996.90 is affirmed. The portion of the judgment for new appliances in the amount of $2,033.07 is reversed, as is the award for repairs in the amount of $839.

Affirmed in part and reversed.

NASH and WOODWARD, JJ., concur.