TIMOTHY CHRISTIAN SCHOOLS, Plaintiff, v. THE VILLAGE OF WESTERN SPRINGS, Defendant-Appellee (Casey Gaik, Plaintiff-Appellant; Edwin Bunyea *et al.*, Intervenors-Appellants).

First District (2nd Division)    No. 1—95—3475

Opinion filed December 24, 1996.—Rehearing denied January 16, 1997.

950

Daniel L. Houlihan, Hinshaw & Culbertson, and Lee J. Schwartz, all of Chicago, for appellants.

Flynn, Murphy, Ryan & Seyring, of Chicago, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiff Casey Gaik filed a petition for contempt and sought to enjoin the defendant Village of Western Springs (the Village) from selling approximately one acre of land to the Gammonly Group for development of 14 townhomes. Following an evidentiary hearing, the trial court denied Gaik relief and he appeals.[1] We address the following issues: (1) whether there is a use restriction on the Village's property; (2) whether the Village is estopped from selling its property; and (3) whether the public trust doctrine prohibits the Village from selling the property. We affirm.

---

[1]The intervenors filed an amended petition to intervene asserting the same challenge, among others, as Gaik. The intervenors were homeowners surrounding the parcel in question and included: Edwin Bunyea, Marian Bunyea, Thomas Braun, Evangeline Braun, Kid Robare, Kyle Robare, David Jensen, Carole Jensen, Sallie Silvey, Mark Mueller, Karen Mueller, Rocco DiIorio, Helen DiIorio, Vitas Niaura and Victoria Niaura. The petition was denied along with Gaik's cause. Intervenors appealed but did not file a separate brief. Gaik and intervenors will be collectively referred to as plaintiffs.

## I. FACTS

In 1981, Gaik sought to purchase three acres of land from Timothy Christian Schools. The property was zoned residential. In order to develop the property into a professional office building with parking, Gaik requested a zoning variance from the Village. The Village denied the request and Gaik sued.[2] After a trial, the trial court ruled that the Village's zoning ordinance was unconstitutional. In order to avoid the expense and delay of an appeal, the risk of reversal, and to promptly commence development, Gaik entered into an agreement with the Village. In exchange for the Village's agreement not to appeal, Gaik agreed to reduce the scope of his development. Gaik also agreed to give the Village approximately one acre of the property. The agreement further provided that both Gaik and the Village would make improvements on the property for drainage and flood control. The agreement was memorialized in the trial court's "December 28, 1982 Revised Judgment and Order" (the 1982 order) and site plan incorporated therein. The parcel was deeded to the Village; however, the deed does not contain the aforementioned agreement or in any way refer to the 1982 order and site plan.

In 1994, the Village entered into a contract to sell its one-acre parcel to the Gammonly Group for a townhome development. This development will require rezoning, variances, and other modifications of existing ordinances. Gaik filed the instant case, asserting that the one-acre parcel was given to the Village so it would not be developed, and that selling or using the land for any use other than open space violates the terms of the agreement entered into and the 1982 order reflecting that agreement. In particular, plaintiffs argue that the site plan prohibits the sale or development of the parcel. Gaik sought a permanent injunction asking the court to rescind the deed to the Village and revert the one-acre parcel to him. After briefing and an evidentiary hearing, the trial court denied plaintiffs' request, finding no language in the deed or the 1982 order that restricted the use of the one acre or prohibited the Village from selling it for development.

## II. ANALYSIS

A. Use or Conveyance Restriction on the Village's Property

Plaintiffs contend that the trial court erred in denying relief

---

[2]In 1981, both Gaik and Timothy Christian Schools were party plaintiffs. In the instant case, Gaik filed the petition. Timothy Christian Schools is listed as a plaintiff in this suit because Gaik's petition was filed under the original 1981 case number.

when it based its decision solely on the fact that no restriction on the use of the property was contained in the deed, *i.e.*, they contend the trial court erred in applying the doctrine of merger by deed. Plaintiffs argue that the 1982 order, which incorporates the site plan, requires the Village to keep the land open as a park. They assert that the Village is prohibited from developing the land or selling it for development. In other portions of their brief, plaintiffs contend the area was intended to be used as drainage for public use. According to plaintiffs, this would require that the land remain open space. Plaintiffs state the intent of the 1982 agreement that conveyed the land to the Village was that the land would be used as a drainage and flood control area in perpetuity.

■ The doctrine of merger provides that, when a deed is executed, the contract for sale merges into the deed and ceases to exist. However, when the provisions in the contract are collateral to and independent of the provisions in the deed, there is no merger. *Daniels v. Anderson*, 162 Ill. 2d 47, 63 (1994); *Ollivier v. Alden*, 262 Ill. App. 3d 190, 195 (1994). Whether and to what extent merger occurs is a matter of the parties' intent as evidenced by the language of the instruments and surrounding circumstances. *Daniels*, 162 Ill. 2d at 64.

■ In this case, the 1982 order incorporates the contract between the parties. Because there are provisions in the 1982 order that are independent of provisions in the deed and cannot be fulfilled by it, the 1982 order does not merge into the deed. Thus, plaintiffs are correct that the doctrine of merger does not apply. However, the trial court did not apply the doctrine. When rendering its decision, the trial court stated there was nothing in the deed *or* the 1982 order that restricted the use of the property or the Village's right to convey it. Because the trial court did not rely only on the deed but also looked to the 1982 order, plaintiffs' merger argument is without merit.

■ The question then is whether there is language in the 1982 order or site plan that would restrict the use or future development of the property. The primary goal of deed construction is to effectuate the parties' intent. *Foster v. Foster*, 273 Ill. App. 3d 106, 111 (1995).

> "The rule is familiar, and of frequent application in cases before this court, that where different instruments are executed as the evidence of one transaction or agreement, they are to be read and construed as constituting but a single instrument. [Citations.] And, furthermore, although it is not competent to contradict or enlarge the terms of a written agreement by parol evidence, it is competent to resort to parol evidence to ascertain the nature and

> qualities of the subject to which the instrument refers. [Citation.] And so we have said, that courts, in construing written contracts, endeavor, in all cases, to place themselves in the position of the contracting parties, so that they may understand the language used, in the sense intended by the persons using it." *Wilson v. Roots*, 119 Ill. 379, 386 (1887).

Where ambiguity exists, it is to be clarified by resort to the intent of the parties as gathered from the instruments themselves, the circumstances attending and leading up to their execution, the origin and source of the deed, the preliminary negotiations of the parties, the subject matter, and the situation of the parties as of the time of contracting. *Miller v. Ridgley*, 2 Ill. 2d 223, 226 (1954); *David v. Schiltz*, 415 Ill. 545, 551 (1953); *Smith v. Grubb*, 402 Ill. 451, 462 (1949); *Law v. Kane*, 384 Ill. 591, 596 (1943). In addition, the court should consider the condition of the property at the time, the relationship of the parties, the previous agreements that the deed is to carry into effect, and the object and purpose to be served. *Smith*, 402 Ill. at 462; *Law*, 384 Ill. at 596. Resolution of deed construction is a question of law (*Lakeland Property Owners Ass'n v. Larson*, 121 Ill. App. 3d 805, 809 (1984)), and our review is *de novo*. *Von Meeteren v. Sell-Sold, Ltd.*, 274 Ill. App. 3d 993, 996 (1995).

Plaintiffs present a valid argument that the provisions in the 1982 order requiring improvements, coupled with the details of the site plan, demonstrate a clear intent on the part of the parties that conveyance of the one-acre parcel to the Village was to assure adequate drainage necessitated by Gaik's development. This finding is further supported by the testimony of Mr. Ralph Lindley, the Village's engineer, who explained in detail how each of the improvements related to drainage concerns.

However, although drainage was clearly the parties' intent in 1982, there is no evidence whatsoever of an intent that the one-acre parcel would remain open space in perpetuity. The 1982 order and site plan do not speak to the future. The agreement does not state that the Village could not permit residential development in the future. All the agreement provides is that if Gaik and the Village construct certain improvements, the Village would drop its appeal. Also, contrary to plaintiffs' contention, the Village is not allowing now what it prohibited 15 years ago. Fifteen years ago, the Village sought to prohibit commercial development. It did not seek to prohibit residential development.

There is no evidence Gaik deeded the one-acre parcel to be used as open space forever. Rather, the clear intent of the agreement is that he bargained away a portion of his land to prevent an appeal,

and possible reversal, so he could proceed immediately with his development. Gaik bought certainty; he did not buy open space forever. This is the same as if Gaik had paid the Village a sum of money to drop the appeal. If Gaik had bargained for open space in perpetuity, such a restriction should have been contained in the pertinent documents. There are specific and appropriate devices to accomplish a perpetual and specified use of property (reservation in deed, condition annexed to grant, covenant, dedication), none of which were utilized here. Moreover, Gaik's contention is controverted by his own actions. Since the entry of the 1982 order, Gaik twice sought to acquire the parcel from the Village: first in 1988, to develop it into a parking lot, and later in 1993, to construct townhomes. Such actions belie Gaik's proposition that all along it was his intent for the property to remain open forever.

Finally, plaintiffs present no authority to support a contention that the Village can acquire property for one use and not later determine that use is no longer necessary. Simply because certain factors are present at one time does not mean the same factors are later (or always) present. There is strong authority to contradict plaintiffs' argument. In *Paepcke v. Public Building Comm'n*, 46 Ill. 2d 330 (1970), a municipality was allowed to change the use of land that was *dedicated to* and *held out* by the city as a park. The court stated:

> "[W]e approach the first question presented in this appeal: Have plaintiffs who are property owners adjacent to or in the vicinity of the parks dedicated by the acts of 1869 a private property right to continuation of the park use of which even the legislature cannot deprive them? This question must be answered in the negative. The mere dedication by the sovereign of lands to public park uses does not give property owners adjoining or in the vicinity of the park the right to have the use continue unchanged even though, when the park was established, abutting or adjoining owners were assessed for special benefits conferred." *Paepcke*, 46 Ill. 2d at 338.

Thus, although it is quite true that the intent of the parties in 1982 was drainage control due to Gaik's development, plaintiffs have not presented evidence to demonstrate that the intent of the parties was that the one-acre parcel would remain open space forever. Moreover, there is nothing in the record that states drainage is currently a problem or that the Gammonly development would create a drainage problem. Based on the above, the trial court did not err in ruling there was no restriction on the Village's use or development of the property.

## B. Estoppel

Next plaintiffs contend that the Village is judicially estopped

from selling the parcel for development. According to plaintiffs, the Village has consistently taken the position that the land had to remain open for drainage purposes, which is illustrated by the Village's "Official Land Use Plan" (the land use plan) wherein the parcel is designated as a park.

■ Judicial estoppel "prevents a party from asserting inconsistent positions before courts in separate proceedings in order to receive favorable judgments in each proceeding." *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 259 Ill. App. 3d 836, 850 (1994). If judicial estoppel applies, a party who adopts one position in a legal proceeding is then estopped from asserting a contrary position in a subsequent legal proceeding. *In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989*, 259 Ill. App. 3d 231, 238 (1994). The requisite elements are:

> "(1) two positions have been taken by the same party; (2) the positions were taken in separate judicial or quasi-judicial administrative proceedings; (3) the record[s] clearly reflect[ ] that the party intended the trier of fact to accept the truth of the party's position; (4) the party was successful in asserting the first position and received some benefit in the first proceeding; and (5) the two positions are totally inconsistent." *In re Air Crash Disaster*, 259 Ill. App. 3d at 238-39.

■ The record does not demonstrate that judicial estoppel has been established. First, the two positions taken by the Village are not in any way inconsistent. In 1982, the Village sought to prohibit *commercial* development on the parcel. The issue in 1994 was *residential* development. Moreover, with time, the needs and policies of a municipality are subject to change; thus, the passage of 12 years alone is sufficient to explain the difference in the Village's positions.

## C. Public Trust Doctrine

Plaintiffs next contend that the Village is not authorized to sell the land for other than a public purpose under the public trust doctrine and there is no statutory or constitutional authority authorizing the sale. Plaintiffs argue this is a classic "Dillon's Rule" case.

■ Dillon's Rule provides that a non-home-rule municipality may exercise only those powers granted to it by the Illinois Constitution or by statute. *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1086 (1994). A non-home-rule unit may acquire and hold title to real property only for a legitimate corporate purpose. *Village of Fox River Valley Gardens v. Lake County Forest Preserve District*, 224 Ill. App. 3d 919, 934 (1992). See also 65 ILCS 5/2—2—12 (West 1994).

■ Dillon's Rule does apply since the Village is a non-home-rule

unit. However, application of the rule does not necessarily preclude a municipality from conveying title to real estate. Section 11—76—1 of the Municipal Code provides:

"Any city or village incorporated under any general or special law which acquires or holds any real estate for any purpose whatsoever, *** has the power *** to convey the real estate when, in the opinion of the corporate authorities, the real estate is no longer necessary, appropriate, required for the use of, profitable to, or for the best interests of the city or village." 65 ILCS 5/11—76—1 (West 1994).

Also, section 11—76—4.1 authorizes a non-home-rule unit to sell surplus property. 65 ILCS 5/11—76—4.1 (West 1994). Thus, contrary to plaintiffs' assertion, there is statutory authority to permit the sale.

■ The public trust doctrine was created by the United States Supreme Court in *Illinois Central R.R. Co. v. Illinois*, 146 U.S. 387, 36 L. Ed. 1018, 13 S. Ct. 110 (1892), in which the Court found that the state held the navigable waters in Chicago's harbor in trust for the public. The Court stated:

"But it is a title [to these lands] different in character from that which the state holds in lands intended for sale. *** It is a title held in trust for the people of the state that they may enjoy the *** waters, *** freed from the obstruction or interference of private parties. *** [Abdication of control over these lands] is not consistent with the exercise of that trust which requires the government of the state to preserve such waters for the use of the public. The trust devolving upon the state for the public, and which can only be discharged by the management and control of property in which the public has an interest, cannot be relinquished by a transfer of the property. The control of the state for the purposes of the trust can never be lost, except as to such parcels as are used in promoting the interests of the public therein, or can be disposed of without any substantial impairment of the public interest in the lands and waters remaining." *Illinois Central R.R. Co.*, 146 U.S. at 452-53, 36 L. Ed. at 1042, 13 S. Ct. at 118.

To establish a right to a remedy under the doctrine, plaintiff must allege facts showing "certain property is held by a governmental body for a given public use; the governmental body has taken action that would cause or permit the property to be used for a purpose inconsistent with its originally intended public use; and such action is arbitrary or unreasonable." *Paschen v. Village of Winnetka*, 73 Ill. App. 3d 1023, 1028 (1979). "When a state holds a resource which is available for the free use of the general public, a court will look with considerable skepticism upon *any* governmental conduct which is

calculated *either* to reallocate that resource to more restricted uses *or* to subject public uses to the self-interest of private parties." (Emphasis in original.) *People ex rel. Scott v. Chicago Park District*, 66 Ill. 2d 65, 78 (1976). However, the "property of a municipal corporation or political subdivision not restricted or dedicated to a particular use [is] subject to the will of the legislature." *Wade v. Kramer*, 121 Ill. App. 3d 377, 380 (1984). The municipality may transfer the use of the property even when the original use is thereby wholly destroyed. *People v. Illinois Toll Highway Comm'n*, 3 Ill. 2d 218, 234 (1954); *Wade*, 121 Ill. App. 3d at 380.

■ For the reasons that follow, we conclude that the public trust doctrine does not apply. First, the public lands involved in the cited cases were parks, conservation areas, and mostly submerged land under Lake Michigan or the Chicago River. See *Illinois Central R.R. Co.*, 146 U.S. 387, 36 L. Ed. 1018, 13 S. Ct. 110 (navigable waters of Lake Michigan); *People ex rel. Scott*, 66 Ill. 2d 65 (same); *Paepcke v. Public Building Comm'n*, 46 Ill. 2d 330 (1970) (park land); *Droste v. Kerner*, 34 Ill. 2d 495 (1966) (submerged lands under Lake Michigan); *Wade*, 121 Ill. App. 3d 377 (conservation area). In the instant case, the land is none of the above. Rather, it is an empty lot with drainage improvements with the alleged public use being drainage and flood control that were deemed necessary in 1982.

Further, the land was not dedicated to the Village as a park. We also reject plaintiffs' contention that the subject property was a park because of its classification on the land use plan. On the land use plan, there are 10 classifications of land use. One, "Public Park/Open Space," is color-coded green. There is no classification for parks alone. There are 14 lots (not including the long strips on the west edge of town adjacent to the highway) color-coded green. There are 11 lots that are held out by the Village as parks and are specifically identified as "PARK." Many of these also contain the designation "PLAYGROUND" and/or "TENNIS COURTS." Another lot is identified with "TOWER." Two lots, including the one-acre parcel at issue, carry no identification. The parcel in question, unlike 11 other parcels on the land use plan, is not specifically marked "PARK" nor is any other use designated. It is color-coded green because "Public Park/Open Space" is the most appropriate classification. Thus, because the property is designated "Public Park/Open Space" and it is not designated a park as are other parcels that the Village holds out for that use, the inescapable conclusion is that the one-acre parcel is open space. No evidence has been presented to demonstrate that the Village held out the land as a park or that the general public was given free use of it. Additionally, there is no evidence that a change in the lot's use is unreasonable or arbitrary.

Finally, plaintiffs' reliance on *Baltis v. Village of Westchester*, 3 Ill. 2d 388 (1954), and *People ex rel. Citizens for a Better Bloomingdale v. Village of Bloomingdale*, 37 Ill. App. 3d 583 (1976), to support their contention that the Village has no authority to sell its one-acre parcel, is without merit. The sale is not in conflict with any statutory or constitutional provision as was the case in *Baltis*. In *Bloomingdale*, the plaintiffs challenged a proposed annexation. Their proceeding was dismissed because they were not challenging the village's authority to annex but rather its wisdom in doing so. The court held that such a challenge is not viable under a *quo warranto* proceeding. Because we have concluded that the Village possesses statutory authority to sell the property, *Bloomingdale* has no application.

### III. CONCLUSION

Since plaintiffs have not demonstrated that the 1982 order provides them with a right entitled to protection, there is no basis to enjoin the sale of the property. Because the Village's proposed sale does not in any way violate the 1982 order, there is no basis for the issuance of a rule to show cause or contempt citation.

For the foregoing reasons, the decision of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and LEAVITT, JJ., concur.