TERRY ROBERT LANTERMAN *et al.*, Plaintiffs-Appellees, v. JERRY EDWARDS *et al.*, Defendants-Appellants.

Fifth District    No. 5—97—0058

Opinion filed January 27, 1998.

WELCH, P.J., dissenting.

Glenn R. Tetzlaff, of Marion, for appellants.

Brian D. Lewis, of Marion, for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

Terry and Shirley Lanterman purchased Jerry and Sherry Edwards's home. The Lantermans then sued the Edwardses for damages relating to the replacement of the home heating and air-conditioning system. The trial court awarded the Lantermans $3,450. The Edwardses appeal. We affirm in part, reverse in part, and remand.

Three issues are raised on appeal. First, defendants argue that plaintiffs' pleadings do not conform to the proof in this case. Defendants contend that the trial court awarded damages based upon the extension of a warranty to the heating and air-conditioning unit. Defendants argue that the complaint makes only a bare allegation that the heating and air-conditioning unit was not working and that it alleges no duty or warranty as to the system.

Plaintiffs' complaint alleges that "plaintiffs discovered latent defects in the premises, being that *** the heating and air conditioning are not working[ ] but were specifically warranted by defendants to be in good working order." The complaint also alleges that defendants "falsely and fraudulently represent[ed] to plaintiffs that *** they were not aware of material defects in the heating, air conditioning or ventilating systems[ ] and in fact specifically warranted said system to be in good working order."

■ Given the allegations in the complaint, we cannot agree with defendants that the complaint fails to allege any warranty as to the heating and air-conditioning system. In addition, we note that defendants waived this argument as they never objected to, or raised below, any defect in the pleadings. In fact, defendants defended upon the issues of the existence of the warranties and the condition of the heating and air-conditioning unit. All objections to pleadings shall be raised by motion. 735 ILCS 5/2—615 (West 1996). Any defects in pleadings, either in form or substance, not objected to in the trial court are waived on appeal. *Geleto v. Giglietti*, 40 Ill. App. 3d 226, 228, 352 N.E.2d 1, 3 (1976).

Defendants next argue that the trial court erred in finding that the contract warranting the condition of the heating and air-conditioning unit did not merge into the deed.

The real estate sales agreement entered into between the parties provided as follows:

"CONDITION OF PREMISES. Buyers acknowledge they have inspected the real estate and the improvements thereon, they are acquainted with the condition thereof and they accept the same in ***

***

X (b) As-is condition *except Sellers warrant the plumbing, heating, electrical and air conditioning systems to be in normal working condition on date of possession.* Where paragraph (b) is selected, the paragraph entitled 'Termite inspection' shall apply. Buyers shall have the right to inspect the property during the 48-hour period immediately prior to closing." (Emphasis added.)

The trial court's order provides in pertinent part:

"I find that this clause was incidental to the main purpose of the contract (conveyance of real estate). It was a collateral undertaking[,] and the defendants could not be in breach of it until the 'date of possession', which by the contracts [*sic*] terms was immediately upon closing. [Citations.] The doctrine of merger does not apply to this warranty.

\*\*\*

\*\*\* I find that the contract provides additional rights to the buyers, as stated in the contract, but that said provision is not an exclusive right, or remedy, to the exclusion of all other remedies."

Defendants argue that the warranty provision in the sales agreement merged with the deed upon the delivery of the deed. Defendants argue that the trial court erred because nothing in the contract extended any warranty beyond the date of possession and that in fact it was the plaintiffs who failed to inspect the premises on or prior to closing.

■ In general, if the terms of a contract for the sale of real estate are fulfilled by the delivery of the deed, there is a merger of the two instruments and, unless a reservation is made in the deed, it supersedes all contract provisions. *Mallin v. Good*, 93 Ill. App. 3d 843, 845, 417 N.E.2d 858, 860 (1981). However, when an executory contract contains provisions that are collateral to and independent of the provisions of the subsequent deed, there is no merger and the independent contract clauses survive the delivery of the deed. *Ollivier v. Alden*, 262 Ill. App. 3d 190, 195, 634 N.E.2d 418, 422 (1994). Generally, warranties as to quality, in comparison with requirements of conveyancing, touch upon aspects other than the conveyance itself and are incidental to the main purpose of the deed, which is to transfer good title. *Rouse v. Brooks*, 66 Ill. App. 3d 107, 110, 383 N.E.2d 666, 668 (1978).

■ Whether or not the plaintiffs exercised their contractual right to inspect the premises is of no consequence to the defendants' contractual obligation to provide a heating and air-conditioning system in normal working condition on the date of possession. The representation in the contract that the heating and air-conditioning

unit would be in normal working condition at the time of closing was a collateral undertaking which was not performed by the delivery of the deed. Accordingly, we agree with the trial court that the doctrine of merger does not apply to the warranty as to the heating and air-conditioning system.

■ Next, defendants argue that it was against the manifest weight of the evidence for the trial court to find that the heating and air-conditioning unit was not operable at the time of closing. The plaintiffs testified that within two days after moving into their home, they discovered that the unit was not working. Given the record, we find that the trial court's finding that the unit was not in operable condition at the time of closing was not against the manifest weight of the evidence.

Finally, defendants argue that the trial court erred in awarding $3,450 in damages, which was the cost of a new heating and air-conditioning unit.

As the party seeking to recover, it was the plaintiffs' burden not only to establish that they sustained damages but also to establish a reasonable basis for the computation of those damages. *Schoeneweis v. Herrin*, 110 Ill. App. 3d 800, 808, 443 N.E.2d 36, 42 (1982). A trial court's determination as to damages will not be disturbed unless those findings are manifestly against the weight of the evidence. *Schoeneweis*, 110 Ill. App. 3d at 808, 443 N.E.2d at 42.

Shirley Lanterman testified that she and her husband did not attempt to seek estimates for repairs of the unit. At trial, defendants called the only experts to testify. When asked if the unit was repairable, William King of Fowler Heating testified, "Yes, but I can't really say exactly what the problem was because I never went back to find out exactly what the low voltage problem was." Steve Fowler of Fowler Heating testified that in his opinion the unit could have been repaired for a cost of $50 to $300. Thus, the only experts to testify at trial stated that the heating and air-conditioning unit was repairable.

To award plaintiffs the cost of a new unit as replacement cost is to award plaintiffs a windfall and make them more than whole. See *First National Bank v. Dusold*, 180 Ill. App. 3d 714, 719, 536 N.E.2d 100, 103 (1989). Damages for breach of contract should only place the aggrieved party in the position she would have been in had the contract been performed. *Dusold*, 180 Ill. App. 3d at 719, 536 N.E.2d at 103. Accordingly, we reverse the award and remand for a determi-

nation of the amount of damages to be awarded consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

RARICK, J., concurs.

PRESIDING JUSTICE WELCH, dissenting:

As is, I cannot agree with the majority's result in this matter. I believe that the doctrine of merger is applicable based upon the intent of the parties made evident from a reading of the sales agreement. Whether and to what extent merger occurs is a matter of the parties' intent as evidenced by the language of the instruments and surrounding circumstances. *Timothy Christian Schools v. Village of Western Springs*, 285 Ill. App. 3d 949, 953 (1996).

In the instant case, plaintiffs signed a sales agreement providing that they were to accept the premises from defendants "as is." The sales agreement further provides that defendants warranted the heating and air-conditioning systems to be in "normal working condition *on date of possession*." (Emphasis added.) Plaintiffs were allowed to inspect the property within 48 hours of closing, and defendants were to remedy any defects disclosed prior to closing. Specifically, the agreement provides that defendants would remedy the defects as soon as practical and that closing would occur *"within 48 hours of the completion* of such remedial work." (Emphasis added.) Based upon the language in the sales agreement, I find it clear that any repairs were to be conducted prior to the time of the closing. I cannot find any collateral undertakings that extend beyond the delivery of the deed. The language of the agreement shows that all repairs were intended to be completed prior to the delivery of the deed, and at that time plaintiffs were to accept the property "as is." I disagree with the majority that the warranty as to the heating and air-conditioning systems is a collateral undertaking which extends beyond the delivery of the deed. The language in the contract does not support this conclusion. Plaintiffs accepted the property "as is" at the time of closing, and plaintiffs' failure to inspect the property prior to closing does not extend the warranty of the heating and air-conditioning indefinitely "beyond the date of possession." Accordingly, I believe that the words of the agreement show an intention between the parties to have the sales agreement and the warranty merge with the deed.

Before ending, I wish to note that just as plaintiffs in this case failed to inspect the house prior to possession, the majority has failed

356

to give meaning to the words "as is." The majority's decision has either ignored the words "as is" or given them some new unexplained meaning. I choose not to speculate as to what "as is" now means. All I can say is that following this disposition, it appears that "as is" once was.