ROBERT J. KRAJCIR, Plaintiff-Appellant, v. MARIO R. EGIDI *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—98—0838

Opinion filed June 4, 1999.

Robert J. Krajcir, of Chicago, for appellant.

Joe R. Milburn, of Lincolnwood, for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Robert J. Krajcir appeals from the circuit court's orders dismissing count I of his third amended complaint with prejudice and dismissing his fourth amended complaint, with prejudice. Plaintiff had filed suit against defendants Mario R. Egidi (Mario), Dennis R. Egidi (Dennis), Lloyd S. Levine (Lloyd) and Spaulding Associates (Spaulding), an Illinois partnership, seeking to recover the balance due on a contract for the sale of an apartment building to Spaulding Associates and on a promissory note issued in connection with the sale. Krajcir presents as issues on appeal whether the circuit court erred when it dismissed: (1) count I of his verified third amended complaint with prejudice; (2) his verified fourth amended complaint with prejudice; and (3) his action for an equitable seller's lien. The relevant facts follow.

On March 18, 1982, Krajcir and his brother, Richard W. Krajcir (sellers), entered into a written contract to sell the property commonly known as 1944-50 N. Spaulding Avenue, Chicago, Illinois (Spaulding Property) to Spaulding, Lloyd and Mario (purchasers). The contract was signed by plaintiff, as seller, and Lloyd, as a partner on behalf of Spaulding, the purchaser. This original contract between the parties was amended by a letter dated July 9, 1982, from plaintiff and his brother to Lloyd, which altered the payment provisions of the original contract. The copy of the amendatory letter contained in the record is not signed, but its contents are undisputed. It is also undisputed that Dennis is a partner of Spaulding, despite the fact that his name does not appear on the original contract or the amendatory letter.

The original contract provided for the payment of a purchase price in the amount of $350,000 to plaintiff and his brother, in exchange for the Spaulding Property. It specifically provided that "the funds to be paid hereunder are to come out of Project No. 071—35488 when funded by HUD. If said funding is not received by the Purchaser then this contract is null and void."

The July 9, 1982, amendment to the contract stated, among other things:

> "The amount of $10,000.00 [is] to be paid sellers at the time of the initial closing (delivery of the deed); plus, delivery at the same time of a Promissory Note in the principal amount of $110,000.00 payable to sellers and executed by Mario Egidi and [Lloyd S. Levine], individually, as co-makers; the Note shall be due on the date of final endorsement of the subject H.U.D. Loan and will be satisfied in full upon final payout of the proceeds thereof ***."

The July 9, 1982, amendment by letter further specified that Mario and Lloyd would be responsible for and assume certain liens, bills, fees, taxes, and other costs and expenses which relate to the Spaulding Property. The letter also stated that "[i]t is the intention of the parties that the contract between them dated March 18, 1982, shall remain in full force and effect except as herein specifically amended."

On September 15, 1982, at the closing of the sale of the subject property, a check in the amount of $10,000 was paid to plaintiff and his brother by the purchasers. They also received a written agreement signed by Mario and Lloyd, indemnifying sellers from any and all claims, demands or causes of action that may arise in connection with the property subsequent to September 15. On that same date, a promissory note in the amount of $110,000 was executed by Mario and Lloyd, as individuals, and delivered to plaintiff and his brother. The sellers transferred their rights, title and interest in the Spaulding Property. The deed shows that the property was conveyed to Lloyd S. Levine CLU-CFP, Inc., a corporation, which in turn conveyed the subject property to a bank as trustee under an Illinois land trust. Spaulding was the owner of the beneficial interest in the land trust.

On April 29, 1983, the final endorsement by the United States Department of Housing and Urban Development (HUD) for defendants' Federal Housing Authority Project No. 071—35488 was completed. It was on this date that the $110,000 promissory note paid to the sellers by Mario and Lloyd became due pursuant to the terms of the note.

A payment was subsequently made to plaintiff by check dated March 15, 1984, in the amount of $10,000, drawn on an account of Spaulding, and signed by Lloyd, as partner, and Dennis. A written notation appears on the face of this check reading, "Partial Pymnt Principal of Note MEM[sic] FWD[sic]." A second payment was made to plaintiff by check dated April 3, 1984, in the amount of $55,000. This check was also drawn on a Spaulding account and signed by Lloyd, as partner, and Dennis. A typed notation appears on the face of this check reading, "For payment against land and buildings." On

April 22, 1984, Richard W. Krajcir died intestate, leaving plaintiff as his only survivor and heir at law.

On March 3, 1994, plaintiff filed a verified complaint at law against Mario, Dennis, Lloyd and Spaulding, seeking recovery of the unpaid balance of $55,000 on the promissory note, plus interest. On October 27, 1994, Mario filed a motion to dismiss plaintiff's complaint, based on the fact that Mario had filed for bankruptcy (Chapter 7) in the United States Bankruptcy Court for the Northern District of Illinois—Eastern Division on June 22, 1993. On that same date, Dennis and Spaulding filed a combined motion to dismiss plaintiff's complaint pursuant to sections 2—615, 2—619, and 2—619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615, 2—619, 2—619.1 (West 1994)).

On February 1, 1995, plaintiff filed a verified amended complaint at law, alleging, among other things, that the principal sum of $45,000, plus interest, remained due and owing on the September 15, 1982, promissory note. On June 27, 1995, Dennis and Spaulding filed a combined section 2—619 supplemental motion to dismiss plaintiff's verified amended complaint, alleging that the promissory note was subject to the six-year statute of limitations set forth in section 3—118 of the Uniform Commercial Code (UCC) (810 ILCS 5/3—118 (West 1994) (UCC section 3—118)). They argued that plaintiff's original complaint had been untimely filed, where the statute of limitations had expired on April 29, 1989, six years after the final endorsement by HUD, and plaintiff's complaint in this matter was not filed until March 3, 1994.

On August 31, 1995, following a hearing on the preceding day, the circuit court entered an order granting the motion to dismiss pursuant to section 2—619.1 of the Code, based on the expiration of the applicable statute of limitations. It further held that because "this motion is dispositive of this matter as to [Dennis and Spaulding], there is no need to consider the remaining motions to dismiss."

On September 29, 1995, plaintiff filed a motion to vacate the order of dismissal and for leave to file an amended complaint. On the same date, plaintiff filed a verified second amended complaint, adding a second count and another theory of recovery, based on his claim that he had an equitable vendor's lien on the real estate in the amount of $45,000, the balance of the purchase price due, plus interest.

On February 23, 1996, the circuit court denied the motion to vacate. Noting that "[n]either side was able to supply [the] court with a case that squarely addressed the issue of [the] competing statutes of limitation," the court concluded that the UCC section 3—118 six-year limitation applied to the subject promissory note in this case, not the 10-year limitation under section 13—206 of the Code, as claimed by

plaintiff. The court, however, granted plaintiff leave to file a second amended complaint.

On March 22, 1996, Dennis and Spaulding filed a combined sections 2—615, 2—619, and 2—619.1 motion to dismiss plaintiff's verified second amended complaint, asserting that the circuit court previously had determined plaintiff's cause of action on the promissory note was barred by the six-year statute of limitations and stating, among other things, that the complaint failed to state a cause of action against Dennis and Spaulding, where count I appeared to commingle separate causes of action based on the promissory note and the real estate contract. Dennis and Spaulding further argued that no facts were alleged which would constitute a cause of action on the note against them, not being parties to the note. They stated that no facts had been alleged to support the conclusion that Mario and Lloyd were acting on behalf of Dennis and Spaulding; rather, the facts showed an obligation only on the part of Mario and Lloyd. They also claimed that no cause of action for breach of contract had been brought against them nor had any breach of contract occurred.

With respect to count II, Dennis and Spaulding argued that it failed to allege whether a written vendor's lien had been obtained by plaintiff, since payment of the full purchase price had been received by the sellers at closing, upon delivery of the personal promissory note of Mario and Lloyd. Given the fact that they had no personal obligation to pay the note of Lloyd and Mario, they were entitled to protection under the Frauds Act (740 ILCS 80/0.01 *et seq.* (West 1994)). Finally, they contended that a cause of action for an implied vendor's lien against the real estate and in favor of plaintiff was barred by the applicable statute of limitations, because the promissory note itself was barred.

On August 5, 1996, the circuit court granted the combined motion to dismiss plaintiff's second amended complaint, "striking" count I of the complaint with prejudice, and striking count II of the complaint without prejudice, giving plaintiff leave to replead count II in a third amended complaint.

On October 10, 1996, plaintiff filed his verified third amended complaint. On October 31, 1996, Dennis and Spaulding again filed a combined motion to dismiss plaintiff's third amended complaint, making substantially the same arguments they made in their combined motion to dismiss the second amended complaint.

On June 30, 1997, the circuit court entered an order "striking" (no doubt intending to dismiss) count I of plaintiff's third amended complaint with prejudice, denying the motion to dismiss the verified third amended complaint and denying plaintiff's motion to reconsider

the order of dismissal with respect to count I of the second amended complaint.

On July 15, 1997, plaintiff filed a verified fourth amended complaint. On August 12, 1997, Dennis and Spaulding filed a combined section 2—619 motion to dismiss plaintiff's verified fourth amended complaint, arguing, among other things, that the August 31, 1995, and February 23, 1996, orders of the circuit court were never vacated and were the law of the case, leaving plaintiff no remaining cause of action against them and that any action plaintiff may have would be against Mario and Lloyd. Dennis and Spaulding asserted, for the first time, that in relation to the fourth amended complaint, the doctrine of merger barred a cause of action based on a 10-year statute of limitations and that if the six-year statute of limitations did not apply to plaintiff's implied seller's lien claim, then it was barred by the general five-year statute of limitations pursuant to section 13—205 of the Code (735 ILCS 5/13—205 (West 1996)).

On December 2, 1997, the circuit court ruled that the subject real estate contract, as amended, merged into the deed of conveyance of September 15, 1982, and that plaintiff had no cause of action for breach of contract. It further held that plaintiff's cause of action based on the promissory note of September 15, 1982, was barred by the statute of limitations set forth in UCC section 3—118, as previously ordered by the court on August 31, 1995, and confirmed on February 23, 1996. The court stated that since those orders had not been vacated, they were binding on all parties, and plaintiff had no cause of action for an equitable seller's lien. The court ordered that plaintiff's verified fourth amended complaint be dismissed with prejudice in its entirety and denied his oral motion for leave to amend. On December 12, 1997, plaintiff moved to vacate the order of dismissal, which the circuit court denied on February 9, 1998. Plaintiff appeals.

I

Plaintiff first contends that the circuit court erred in dismissing, with prejudice, his action on the promissory note alleged in count I of his verified second and third amended complaints, based on its finding that his cause of action on the promissory note was barred by the six-year section 3—118 statute of limitations. 810 ILCS 5/3—118 (West 1994) (section 3—118).

■ A section 2—619 motion to dismiss (735 ILCS 5/2—619 (West 1996)) is proper if no set of facts may be proven by which the plaintiff can recover. *Management Ass'n of Illinois, Inc. v. Board of Regents of Northern Illinois University*, 248 Ill. App. 3d 599, 606, 618 N.E.2d 694 (1993). All well-pleaded facts alleged in the complaint are taken as

true for purposes of the motion to dismiss. Conclusions not supported by specific factual allegations are not considered, and where defects do not appear on the face of the pleadings, affidavits may be filed, stating affirmative matters that justify dismissal. *Management Ass'n of Illinois, Inc.*, 248 Ill. App. 3d at 606.

## A

In the present case, plaintiff asserts that his causes of action on the promissory note and the contract are not barred by any statute of limitations. He first argues that section 3—118 is inapplicable to his action on the promissory note and that the 10-year statute of limitations set forth in section 13—206 of the Code (735 ILCS 5/13—206 (West 1994) (section 13—206)) applies. Plaintiff further contends that uncontroverted, relevant facts alleged in his verified amended complaints establish that payments on the note and contract were made by Dennis and Spaulding within 10 years of the filing of this case, within the terms of section 13—206.

■ Section 3—118 provides in relevant part:

"(a) Except as provided in subsection (e), an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within 6 years after the due date or dates stated in the note or, if a due date is accelerated, within 6 years after the accelerated due date." 810 ILCS 5/3—118(a) (West 1994).

■ Section 13—206 of the Code states in pertinent part:

"Except as provided in Section 2—725 of the 'Uniform Commercial Code',[ ] actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within 10 years next after the cause of action accrued; but if any payment or new promise to pay has been made, in writing, on any bond, note, bill, lease, contract, or other written evidence of indebtedness, within or after the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of such payment or promise to pay." 735 ILCS 5/13—206 (West 1994).

Section 3—118 of the UCC pertains to negotiable instruments, including negotiable promissory notes; section 13—206 of the Code relates to, among other written evidences of indebtedness, nonnegotiable promissory notes and written contracts, with the exception of those that relate to the sale of goods under section 2—725 of the UCC (810 ILCS 5/2—725 (West 1994)). Identification of the applicable statute of limitations turns on whether the promissory note of September 15, 1982, executed by Mario and Lloyd and delivered to plaintiff and his brother, is negotiable.

■ Section 3—104 defines a negotiable instrument, in part, as follows:

"(a) Except as provided in subsections (c) and (d), 'negotiable instrument' means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) *is payable to bearer or to order* at the time it is issued or first comes into possession of a holder;

(2) *is payable on demand or at a definite time* \*\*\*." (Emphasis added.) 810 ILCS 5/3—104(a)(1), (a)(2) (West 1994).

■ The subject promissory note does not comply with the requirement of a negotiable instrument for two reasons: first, in that, although it is payable to specified individuals, it does not contain the words of negotiability, "to order" or "to bearer," as required by section 3—104(a)(1). Second, and perhaps more importantly, the subject note is not "payable on demand or at a definite time," as required by section 3—104(a)(2). Rather, the note states that payment was promised "on the date of final endorsement by the United States Department of Housing and Urban Development Loan on Project No. 071—35488 PM/L8 known as Spaulding Re-Hab." Despite the fact that final endorsement by HUD eventually was made on April 29, 1983, funding by the agency was an uncertainty at the time the note dated September 15, 1982, was executed.

In support of their position that the wording of the note established payment at a definite time, defendants cite cases in which Illinois courts have held that dates of death are considered to be definite, fixed payment dates in promissory notes. Defendants miss the mark: death is certain; final endorsement by HUD is not. The original contract reveals that the parties recognized this possibility and provided for it. The last two sentences of the three-page handwritten, original contract state:

"It is further expressly understood and agreed between the parties hereto that the funds to be paid hereunder are to come out of Project No. 071—35488 when funded by HUD. *If said funding is not received by the Purchaser then this contract is null and void."* (Emphasis added.)

For the foregoing reasons, the promissory note executed by Mario and Lloyd was not a negotiable instrument under article 3 of the UCC; consequently, section 3—118 of the UCC is not applicable to this case; section 13—206 of the Code does apply.

The facts alleged in count I of plaintiff's verified third amended complaint and the exhibits attached thereto establish that on March

15, 1984, plaintiff met with Mario, Dennis and Lloyd, each of whom acknowledged their obligation, and the obligation of Spaulding, the partnership, to pay the purchase price due under the contract and the promissory note. At that meeting, plaintiff received a check in the amount of $10,000, which was signed by Lloyd, as partner, and Dennis, and drawn against a Spaulding bank account. Wording in the lower, left-hand corner on the face of the check stated that it was in "Partial Pymnt Principal of Note MEM[sic] FWD[sic]."

■ Section 13—206 provides that actions brought pursuant to its terms may be commenced within 10 years of any payment on any note, written contract or other written evidences of indebtedness. The last date of payment in this case was April 3, 1984, when plaintiff received a check made payable to him in the amount of $55,000. The check was again drawn against a Spaulding bank account and signed by Lloyd, as partner, and Dennis. Inserted in the lower, left-hand corner of the check were the words, "For payment against land and buildings," the contract's subject matter. It was on this date that the statute of limitations pursuant to the provisions of section 13—206 began to run. Plaintiff filed his original complaint in this matter on March 3, 1994. Therefore, because plaintiff filed his complaint within 10 years of the last payment received, his complaint against Spaulding, the partnership, and Dennis, one of its partners, was timely filed and not barred by the statute of limitations. The payments by Lloyd, as partner, and Dennis demonstrate that they recognized their obligations and those of the partnership under the promissory note and the contract. Accordingly, the circuit court should have found that defendants are obligated to pay to plaintiff the balance of the purchase price due.

## B

■ Relying on the Frauds Act (740 ILCS 80/1, 2 (West 1994)), defendants argue that the checks do not constitute a writing sufficient to make the partnership or Dennis personally responsible for the obligations of Mario and Lloyd on the promissory note. They assert that the checks themselves do not contain a statement that Dennis or Spaulding agrees to be responsible for payment to plaintiff for the balance due under the note and that Dennis and Spaulding did not receive consideration for such an undertaking. When Lloyd signed the checks in his capacity as partner, however, this was evidence that he was acting on behalf of Spaulding, the partnership, as well as each of his partners, making defendants liable for the unpaid balance due.

The dismissal of count I was error and is reversed and the cause is remanded for further proceedings.

## II

Plaintiff next contends that the circuit court erred in dismissing his action on the contract for the balance due, as alleged in his verified fourth amended complaint, without an evidentiary hearing or the submission of affidavits by defendants, based on the court's finding that the subject real estate contract, as amended, merged into the deed of conveyance on September 15, 1982, the closing date of the sale. Defendants counter that plaintiff's verified fourth amended complaint failed to state a cause of action for breach of contract, particularly as to Dennis and Spaulding, where "[i]t is obvious from [p]laintiff's pleadings and the exhibits attached thereto *** that the [c]ontract, as amended, was fully performed by all of the parties thereto at the time of closing."

### A

■ The doctrine of merger is not favored by modern courts. *Hagenbuch v. Chapin*, 149 Ill. App. 3d 572, 576, 500 N.E.2d 987 (1986). In *Biehl v. Atwood*, 151 Ill. App. 3d 763, 765, 502 N.E.2d 1234 (1986) (*Biehl*), a case upon which plaintiff relies, this court recognized exceptions to the rule that a buyer's contractual obligation to pay the balance of the purchase price set in a contract for deed merges into the deed upon delivery of the deed, excusing payment under the contract. Where there are other obligations in the contract which delivery of the deed does not fulfill, the contract is not merged into the deed and remains open for performance of such terms. *Biehl*, 151 Ill. App. 3d at 765. In determining whether and to what extent the contract merged into the deed, the *Biehl* court found the intention of the parties and the surrounding circumstances to be controlling. *Biehl*, 151 Ill. App. 3d at 766. In that case, the purchasers made six installment payments of $2,000 each pursuant to the terms of the contract for deed, during the six years following the sellers' deliverance of the deed to the purchasers. This court found that the purchasers "would hardly have paid $12,000 to the [sellers] under the contract for deed if the parties had intended the execution and delivery of the deed to cancel the contract." *Biehl*, 151 Ill. App. 3d at 766. This court further noted that nothing of record indicated any further agreement between the purchasers and sellers after execution and delivery of the deed. We also observed that there was no evidence of any intention to make a gift of the balance due under the contract in the event of the sellers' deaths. Accordingly, there was no merger, where it appeared that the defendant/purchaser was merely trying to evade his obligation under the contract following the sellers' deaths. See *Fitton v. Barrington Realty Co.*, 273 Ill. App. 3d 1017, 1022, 653 N.E.2d 1276 (1995); *Holec*

*v. Heartland Builders, Inc.*, 234 Ill. App. 3d 253, 255, 600 N.E.2d 489 (1992).

B

Plaintiff also argues the doctrine of merger is inapplicable and does not excuse payment by Dennis and Spaulding of the total purchase price under the contract for the sale of real property, in the absence of evidence that the contract was canceled. He asserts that there is nothing in the record to support a finding of any further or different agreement between the parties after delivery of the deed and that there is nothing in his verified fourth amended complaint or the exhibits attached thereto from which it may be reasonably inferred that the contract merged into the deed. He states that this is particularly so where he alleged in his verified fourth amended complaint that at the time of delivery of the $10,000 check dated March 15, 1984, he personally met with defendants, including Dennis, who, at that time, acknowledged the partnership's obligation and their own personal obligation to pay the amount due under the contract and note.

Defendants, on the other hand, argue that plaintiff's contentions ignore the specific terms of the contract, as amended, and seem to mix the separate promissory note obligations of Mario and Lloyd with his cause of action on the contract. They argue that according to the amended contract, payment was to be made upon delivery of the note and that plaintiff and his brother would look to Mario and Lloyd for payment of the purchase price. Defendants maintain that the amended contract makes no mention of any obligation on the part of Spaulding, its partners or Dennis regarding payment of the purchase price. Rather, they assert that the promissory note was an obligation separate from the contract; as required by the amended contract, the note was executed by Mario and Lloyd and accepted as payment by plaintiff and his brother, who in turn conveyed title to the property.

Recounting the record on this point, on March 18, 1982, the parties entered into the original real estate contract which was amended by letter dated July 9, 1982. It was agreed that (1) $10,000 was to be paid to the sellers at the time of closing; (2) at the same time defendants would deliver a promissory note payable to the sellers in the amount of $110,000, to be executed by Mario and Lloyd, individually, as comakers; and (3) it was the parties' intention that the March 18, 1982, contract would remain in full force and effect, except as amended.

At the September 15, 1982, closing, plaintiff and his brother received a check in the amount of $10,000 from the purchasers, as

well as a promissory note in the amount of $110,000, executed and delivered by Mario and Lloyd, as individuals. The sellers transferred their rights, title and interest in the property.

The promissory note became due on approximately April 29, 1983, when the final endorsement by HUD was completed. Plaintiff subsequently received a check dated March 15, 1984, drawn on a Spaulding account, made payable to him in the amount of $10,000 and signed by Lloyd, as partner, and Dennis. A second payment was made payable to plaintiff by check dated April 3, 1984, drawn on a Spaulding account, in the amount of $55,000, and signed by Lloyd, as partner, and Dennis.

■ As previously observed, written on the March 15, 1984, check are the words "Partial Pymnt Principal of Note MEM[*sic*] FWD[*sic*]." The check dated April 3, 1984, states "payment against land and buildings." Despite the absence of the word "partial" on the latter check, this was substantial evidence that there was no merger here, based on the intention of the parties and the surrounding circumstances. As in *Biehl*, the purchasers arguably would not have made payments to plaintiff under the contract for deed subsequent to the closing and the note's due date had the parties intended the delivery of the deed to cancel the contract obligations. *Biehl*, 151 Ill. App. 3d at 766. This is especially true where there is no showing of any further agreement between the parties subsequent to the execution and delivery of the deed. Although the *Biehl* case involved an installment contract, not a promissory note as in the instant case, the rationale applicable here is the same.

The parties to the instant contract agreed that payments would be made under the contract and related note, and partially fulfilled those terms in March and April of 1984 after delivery of the deed at closing in September of 1982. Therefore, evidence that the unperformed contract terms survived delivery of the deed precluded dismissal of plaintiff's fourth amended complaint, and the judgment must be reversed and the cause remanded for this reason as well.

### III

Lastly, plaintiff contends that the circuit court erred in dismissing his cause of action to enforce a vendor's lien against the real property for the monies owed him. Defendants counter that it is obvious that plaintiff never intended to reserve any form of a vendor's lien, where he did not reserve a mortgage or any other lien on the Spaulding property and specifically placed the obligation on Mario and Lloyd to be personally responsible for certain liens on the property and to indemnify and hold him and his brother harmless therefrom.

Defendants argue further that plaintiff and his brother required and accepted as payment for the property the separate personal promissory note obligation of Mario and Lloyd, as security to ensure payment of the purchase price, rather than that of the partnership. Because the circuit court erred when it applied the statute of limitations set forth in UCC section 3—118 to the present case, defendants' additional assertion that plaintiff's cause of action based on an implied seller's lien would be barred under section 3—118 need not be addressed.

In cases where a lien has not been reserved expressly, a lien is raised in equity in favor of the vendor who has parted with legal title without receiving payment of the full purchase price; it arises in every sale and conveyance of land when the purchaser has not paid in full. *Mellon Bank, N.A. v. Midwest Bank & Trust Co.*, 265 Ill. App. 3d 859, 873, 638 N.E.2d 640 (1993). Such an implied lien is not an interest or estate in realty or a specific, absolute charge thereon, but an equitable right in the vendor by a proceeding in chancery to resort to the property in case the purchase price is not paid; it is not a debt or right of property, but merely a remedy for the debt which is limited to the property or interest therein sold. *Mellon Bank, N.A.*, 265 Ill. App. 3d at 873. A vendor's implied lien will not be recognized where it is manifest from the parties' contract that a lien was not intended. Any act manifestly declaring an intention not to rely on the lien may defeat it or prevent it from attaching. A vendor's declarations or acts, demonstrating that he does not rely on or has abandoned the lien, may waive the lien. *Mellon Bank, N.A.*, 265 Ill. App. 3d at 873.

Plaintiff in this case asserts that no mortgage or other express lien against the real property was retained by him in the contract or promissory note to secure the payment of the full purchase price, despite the fact that a deed to the property was delivered, title passed and beneficial ownership of the property was transferred to Spaulding, the partnership. Plaintiff contends that the circuit court's dismissal of his cause of action to enforce the vendor's lien was based essentially on an inapplicable statute of limitations and the inappropriate application of the doctrine of merger. He further argues that the court's ruling erroneously denied him the remedy of seeking enforcement of his vendor's lien in order to collect the debt owed him, a remedy which he has in addition to his actions on the note and the contract to collect the debt.

Applying the legal principles cited above to this case, a seller's lien was raised in equity in favor of plaintiff, who parted with legal title to the subject property without receiving the full purchase price. It was error to hold otherwise.

For the foregoing reasons, the judgment of the circuit court is re-

versed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GREIMAN and THEIS, JJ., concur.