SIXTH DIVISION

September 22, 2000

No. 1-00-0742

DANIEL J. NEPPL and S. LEIGH JETER,

Plaintiffs-Appellants,

v.

GLENN S. MURPHY and DEBORAH A. MURPHY,

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

John Laurie

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiffs, Daniel J. Neppl and S. Leigh Jeter, appeal from an order of the circuit court of Cook County dismissing their complaint against defendants, Glenn S. Murphy and Deborah A. Murphy.  Plaintiffs had brought an action against defendants for breach of a real estate contract, seeking damages for breach of an express warranty in the contract which provided that the heating system would be in "operating condition at possession."  Defendants brought a combined motion to dismiss plaintiffs' complaint pursuant to sections 2-615, 2-619, and 2-619.1 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615, 2-619, 2-619.1 (West 1998)).  On January 27, 2000, the trial court granted defendants' motion.  Plaintiffs now contend on appeal that the circuit court erroneously granted the defendants' motion to dismiss plaintiffs' breach of contract claim on the grounds that it was barred under the doctrine of merger.  The relevant facts follow.

On May 3, 1999, plaintiffs entered into a written contract to purchase a single-family home known as 3835 North Alta Vista Terrace in Chicago, Cook County, Illinois (residence), from the defendants.  Section 3 of the contract provided, in relevant part: "Seller warrants to Buyer that all fixtures, systems and personal property included in this Contract shall be in operating condition at possession ***.  A system or item shall be deemed to be in operating condition if it performs the function for which it is intended, regardless of age, and does not constitute a threat to health or safety"(the express warranty).

Pursuant to the contract, plaintiffs had the right to a professional inspection, which they obtained.  The inspection took place on May 7, 1999.  The inspector identified a crack in the heat exchanger, which defendants replaced.  The inspector's report also contained a recommendation that a safety inspection be performed by the local gas utility company, the final authority for all gas appliances.  The parties closed the real estate transaction on July 16, 1999 and plaintiffs took possession.  On the same day, the local gas utility company, Peoples Gas Light & Coke Co. (Peoples Gas) transferred the gas service to plaintiffs.  As a result of doing so, a representative of Peoples Gas determined that the furnace was not in compliance with the requirements of Peoples Gas or the City of Chicago and "red-tagged" the furnace.  He immediately disconnected the supply of natural gas to the furnace, advising plaintiffs that such action was being taken because the system presented an unacceptable threat to the health and safety of the residents.  A supervisor from Peoples Gas subsequently confirmed that the gas furnace was not in compliance with Peoples Gas or the City of Chicago's building code, specifically the venting requirements, because the gas furnace could only be accessed through a bathroom in the basement, was located in an improper place, and lacked adequate access to a source of air.  He further informed plaintiffs that unless and until the gas furnace was brought into compliance, Peoples Gas could not and would not supply gas for the furnace due to the threat of carbon monoxide poisoning, which constitutes a serious threat to health and safety.

On July 28, 1999, plaintiffs sent a letter to defendants and notified them of a potential warranty claim against them.  The letter informed defendants of the actions taken by Peoples Gas and expressed plaintiffs' position that the condition constituted a breach of the warranty contained in the contract.  In response, on July 29, 1999, defendants sent a letter to plaintiffs suggesting that the Peoples Gas representative who refused to connect the gas service must have been in a "bad mood."  Defendants further stated that they disagreed that the condition constituted a breach of the warranty contained in the contract.  On August 25, 1999, plaintiffs sent another letter to defendants requesting they honor the express warranty given by them in the contract.  Plaintiffs enclosed a letter from a Peoples Gas supervisor confirming their previous finding and stating that the only acceptable solution was replacement of the furnace with a high efficiency model.  Plaintiffs enclosed copies of two estimates they had obtained to remedy the condition and requested that defendants fulfill the warranty obligation by forwarding $3,100.  On September 2, 1999, defendants sent a letter to plaintiffs in which they informed plaintiffs that there had been no change in their position as stated in their July 29, 1999, letter.

On September 10, 1999, plaintiffs installed a closed combustion chamber design furnace, and incurred half the cost of obtaining a building permit from the City of Chicago for purposes of the installation.  Plaintiffs filed suit against defendants on October 20, 1999.  On October 21, 1999, an inspection by Peoples Gas resulted in a finding that the furnace now complies with the venting requirements.

Our standard of review of motions to dismiss, under either section 2-615 or 2-619, is 
de novo
. 
R-Five, Inc. v. Shadeco, Inc., 
305 Ill. App. 3d 635, 639, 712 N.E.2d 913, 915 (1999).  A motion to dismiss based on section 2-615 admits all well-pleaded facts and attacks the legal sufficiency of the complaint; but a motion to dismiss under section 2-619 motion admits the legal sufficiency of the complaint and raises defects, defenses or other affirmative matter which appear on the face of the complaint or are established by external submissions which act to defeat the plaintiff's claim.  
Joseph v. Chicago Transit Authority, 
306 Ill. App. 3d 927, 930, 715 N.E.2d 733, 736 (1999).  Thus, we apply a separate analysis to each basis of defendants' motion.

We first consider defendants' motion to dismiss under section 2-615.  A motion to dismiss brought under section 2-615 challenges only the legal sufficiency of a complaint and alleges only defects 
on the face of the complaint
.
 
Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.
, 186 Ill. 2d 419, 423, 712 N.E.2d 330, 333 (1999).  In ruling on a section 2-615 motion, a court must accept as true all well-pled facts in the complaint and all reasonable inferences that can be drawn therefrom. 
Lewis E. v. Spagnolo
, 186 Ill. 2d 198, 236, 710 N.E.2d 798, 817 (1999).

Plaintiffs' complaint, into which was incorporated the sales contract, refers to the express warranty and alleges as follows:

"The Sellers breached the Contract because the furnace and the heating system were not in 'operating condition at possession' at the time the Contract was entered into and accepted, or at any time.  On the day the Buyers took possession and before they had even moved into the residence, the furnace did not perform the function for which it was intended as it was disconnected by the utility company because it posed a threat to health and safety due to a risk of excessive carbon monoxide accumulation within the residence."

For purposes of defendants' section 2-615 motion, we accept these allegations as true.

In support of their section 2-615 motion, defendants contend: " 'In the absence of an express clause in a contract, the contract for the sale of real estate is "merged" into the deed when it is delivered to the buyer at closing, and the deed supersedes all of the contract provisions.' "  While true, this statement, standing alone, is an oversimplification of the law regarding the doctrine of merger.  Under Illinois law, the doctrine of merger is not absolute. See, 
e.g.,
 
Trapp v. Gordon
, 366 Ill. 102, 110, 7 N.E.2d 869, 873 (1937) ("While it is the general rule that all prior verbal understandings or agreements with reference to the subject matter become merged in a deed upon its acceptance and the deed constitutes the only contract between the parties which binds them [citations] yet this rule, like many other rules in the field of law, is subject to exceptions and qualifications").  A notable exception, germane to the instant case, is that when the contract for the sale of real estate contains provisions that are not fulfilled by delivery of the deed, the contract is not merged as to such provisions, but remains open for performance of such terms. 
Daniels v. Anderson
, 162 Ill. 2d 47, 63, 642 N.E.2d 128 (1994); 
Petersen v. Hubschmun Construction Co., Inc.
, 76 Ill. 2d 31, 39, 389 N.E.2d 1154, 1157 (1979); 
Chicago Title & Trust Co. v. Wabash-Randolph Corp.
, 384 Ill. 78, 87, 51 N.E.2d 132, 137 (1943); 
Trapp v. Gordon
, 366 Ill. 102, 7 N.E.2d 869 (1937).  
Thus, the merger doctrine is not the absolute bar to plaintiffs' claim for breach of the express warranty in the contract that defendants assert it to be.  Instead, the applicability of the merger doctrine here first requires a determination of whether the express warranty constituted a collateral undertaking excepted from the merger doctrine.

Since any consideration of whether the merger doctrine applies here necessarily requires that we go beyond the four corners of the complaint,  the merger doctrine may not be considered in ruling on a section 2-615 motion.  Indeed, none of the cases cited by defendants involving the doctrine of merger involved a section 2-615 motion to dismiss for failure to state a cause of action.  Accepting plaintiffs' allegations as true, for purposes of section 2-615, we conclude that those allegations sufficiently state a cause of action for breach of express warranty.

Although a section 2-615 motion concerns itself solely with defects on the face of the complaint, a section 2-619 proceeding enables the court to dismiss the complaint after considering issues of law or easily proved issues of fact. 
Yu v. Kobayashi
, 281 Ill. App. 3d 489, 492, 667 N.E.2d 106, 108 (1996).  Section 2-619(a)(9), in particular, allows dismissal when "the claim asserted * * * is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/619(a)(9)(West 1998).   Our supreme court has acknowledged that there is "some degree of overlap" between the two motions.
 Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 485, 639 N.E.2d 1282, 1290 (1994); see also 
AG Farms, Inc. v. American Premier Underwriters, Inc.,
 296 Ill. App. 3d 684, 688, 695 N.E.2d 882, 886 (1998).  

The term "affirmative matter" as used in section 2-619(a)(9) has been defined as a type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint. 
Bloomingdale State Bank v. Woodland Sales Co.,
 186 Ill. App. 3d 227, 233, 542 N.E.2d 435, 439 (1989).  We believe that the defendants' evocation of the merger doctrine, as a basis for its motion to dismiss, constitutes an affirmative matter that is outside the face of the complaint.  Accordingly, this part of defendants' motion to dismiss should have been brought pursuant to section 2-619(a)(9), in that it requires that we consider this issue of law.  Because, however, all of the relevant arguments were addressed by plaintiffs in their response to defendants' motion, plaintiffs were not prejudiced by the defendants' mislabeling of this part of their motion.  Thus, we shall further consider defendants' contentions that the merger doctrine bars plaintiffs' complaint.

Under the doctrine of merger, all agreements between a buyer and seller are said to have merged in the deed, and if reservations are not contained in that instrument, the doctrine of merger will prevent relief to the aggrieved vendee after receipt of the deed. 
Petersen,
 76 Ill. 2d at 38-39, 389 N.E.2d at 1157.  The 
Petersen
 court described the merger doctrine as an accepted principle of real estate law, similar to the doctrine of 
caveat emptor
, which is based on reasons founded in antiquity.  Under these accepted principles, the vendee took property at his risk. 
Petersen
, 76 Ill. 2d at 38, 389 N.E.2d at 1157.  The inconsistent application of the merger doctrine has been noted (see L. Berger, 
Merger by Deed–What Provisions of a Contract For The Sale of Land Survive The Closing?
, 21 Real Est. L.J. 22, 23 (1992) ("courts use many differing tests or formulae to determine which provisions merge and which do not, and the results for many of the most common contract terms are all over the lot")) and the doctrine has been the subject of criticism. See P. Teich,
 
A Second Call for Abolition of the Rule of Merger by Deed
, 71 U. Det. Mercy L. Rev. 543, 568 (1994) ("It is understandable that there should be so much difference of opinion.  The merger by deed rule actually implements a wide spectrum of theories of discharge. It is time the courts acknowledge this fact and end their effort to support a monolithic doctrine.  The chaos surrounding the rule affects every real estate transaction taking place daily in the United States. The merger rule should be abolished".)  This court has recently acknowledged that modern courts do not favor the doctrine of merger.
 Krajcir v. Egidi,
 305 Ill. App. 3d 613, 623, 712 N.E.2d 917, 924 (1999).  Nonetheless, Illinois has not rejected the doctrine.  As noted earlier, however, the merger doctrine is subject to exceptions and qualifications.

As the 
Petersen
 court explained:

"In Illinois, however, certain exceptions to the merger doctrine have been created.  Reasoning that the merger doctrine evolved solely to protect the security of land titles, the Illinois courts have held that when the deed embraced and contained all of the subjects of the executory contract, the contract merged with the deed.  However, an executory agreement for the performance of separate and distinct provisions did not merge with the deed.  The prior contract is superseded only as to such of its provisions as are covered by the conveyance made pursuant to its terms."
Petersen
, 76 Ill. 2d at 39, 389 N.E.2d at 1157.

See also 
Daniels v. Anderson
, 162 Ill. 2d 47, 63, 642 N.E.2d 128, 135 (1994); 
Harris Trust & Savings Bank v. Chicago Title & Trust Co.
, 84 Ill. App. 3d 280, 284, 405 N.E.2d 411, 415 (1980) (an executory agreement for performance of distinct and separate acts is not merged in a subsequent instrument executed in only part performance of its provisions, but remains in full force and effect as to provisions not performed); 
Krajcir v. Egidi,
 305 Ill. App. 3d 613, 623, 712 N.E.2d 917, 924 (1999) (since delivery of the deed does not fulfill these other obligations in the contract, the contract is not merged into the deed and remains open for performance of such terms
).  These separate and distinct provisions in an executory contract that do not merge with the deed have been described as "collateral to and independent of the provisions in the subsequent deed." 
Harris Trust and Savings Bank v. Chicago Title & Trust Co.
, 84 Ill. App. 3d at 284, 405 N.E.2d at 415; 
Lanterman v. Edwards
, 294 Ill. App. 3d 350, 353, 689 N.E.2d 1221, 1223 
(1998);
 
Timothy Christian Schools v. Village of Western Springs
, 285 Ill. App. 3d 949, 953, 675 N.E.2d 168, 171 (1996); 
Fitton v. Barrington Realty Co., Inc.,
 273 Ill. App. 3d 1017, 1022, 653 N.E.2d 1276, 1280 (1995).  When a contract for the conveyance of land provides for performance of these "other acts besides conveyance," it remains in effect until such provisions have been fully performed. 
Trapp v. Gordon
, 366 Ill. at 110, 7 N.E.2d at 873; 
Kellner v. Bartman
, 250 Ill. App. 3d 1030, 1037, 620 N.E.2d 607, 611 (1993).  Delivery of the deed has no effect on and is irrelevant to these separate and distinct agreements contained in the sales contract.  Therefore, we believe that the threshold issue in any case involving the merger doctrine as a defense is whether the contractual provision at issue is collateral to and independent of the provisions in the subsequent deed; if so, there is no merger.

Our analysis begins with a look at the nature of the warranty contained in the contract.  Generally, warranties as to quality, in comparison with requirements of conveyancing, touch upon aspects other than the conveyance itself and are incidental to the main purpose of the deed, which is to transfer good title. 
Lanterman,
 294 Ill. App. 3d at 353, 689 N.E.2d at 1224; 
Rouse v. Brooks
, 66 Ill. App. 3d 107, 110, 383 N.E.2d 666, 668 (1978).

Rouse v. Brooks
, 66 Ill. App. 3d 107, 383 N.E.2d 666 (1978), was a case of first impression as to whether the merger doctrine applied to an express quality warranty made by a seller of a previously owned home as part of the sales contract.  Previously, in 
Brownell v. Quinn
 
Home Builders
, 47 Ill. App. 2d 206, 208-09, 197 N.E.2d 721 (1964), the court had held that a covenant of a builder/vendor to convey a lot and construct a house thereon "in a neat and workmanlike" manner did not merge into the deed since delivery of deed did not constitute performance of this covenant because it was an undertaking collateral to and not part of the primary purpose of the contract, which was to convey title to real estate.  In 
Rouse
, as here, the purchase agreement not only provided for the conveyance of the property, but also contained express warranties as to the quality of the property and its improvements.  The express warranty at issue in 
Rouse
 provided that, among other things, all of the equipment in the house was in "good, proper, satisfactory and functional working order." 
Rouse
, 66 Ill. App. 3d at 108, 383 N.E.2d at 667.  The court noted that most of the provisions in a land sales contract deal with the mechanics and requirements of conveyancing which the deed conclusively settles, but that quality warranties are independent of and collateral to the conveyance of title. 
Rouse
, 66 Ill. App. 3d at 110, 383 N.E.2d at 668.  Such warranty provisions contained in the purchase agreement were not satisfied by the acceptance of the deed and, therefore, did not merge in the deed. 
Rouse
, 66 Ill. App. 3d at 110, 383 N.E.2d at 668.  As the court explained: "Warranties as to quality *** touch upon aspects other than the conveyance itself and are incidental to the main purpose of the deed, which is to transfer good title." 
Rouse
, 66 Ill. App. 3d at 110, 383 N.E.2d at 668; see also
 Petersen
, 76 Ill. 2d at 41, 389 N.E.2d at1158 (noting that, if agreement had contained express covenants concerning the 
quality
 of construction, they would not have merged in the deed, but would have continued as a collateral undertaking).

In
 
Mallin v. Good
, 93 Ill. App. 3d 843, 417 N.E.2d 858 (1981), the court recognized the availability of a post-closing contract action.  The court concluded that the representation in the contract that "all heating, plumbing, electrical and air conditioning" would be in reasonable working order at the time of closing was the equivalent of the express warranty of quality involved in 
Rouse
 and, therefore, a collateral undertaking that was not performed by the delivery of the deed and thus not merged into it. 
Mallin v. Good
, 93 Ill. App. 3d at 847, 417 N.E.2d at 861.

More recently, in 
Lanterman v.  Edwards
, 294 Ill. App. 3d 350, 689 N.E.2d 1221 (1998), the court held a warranty provision in a real estate sales agreement as to the quality
 
of premises, namely, that the heating and air conditioning system would be in normal working condition at time of closing, did not merge with the deed upon delivery of the deed as such representation was a collateral undertaking that was not performed by delivery of the deed.

The present case is similar to those cited above and, we believe, 
indistinguishable from
 Lanterman
.  Here the contract expressly warranted that the heating system was to be in operating condition at possession.  Delivery of the deed would not constitute performance of this portion of the contract as it was incidental to the main purpose of the contract, which was the conveyance of real estate.  Thus, the doctrine of merger does not apply to the warranty as to the condition, 
i.e.,
 quality, of the heating system.

Defendants' attempts here to distinguish 
Lanterman
 fail.  Defendants note that
 
Lanterman
 involved a latent defect, but this factor is totally irrelevant to the issues here.  In fact, with respect to the issue of latent defects, the defendant in 
Mallin
 had contended that the doctrine of merger should be relaxed only in the case of latent defects and not where plaintiffs discovered, or should have discovered, any defects when they inspected the home before the closing.  The 
Mallin
 court explained, however, that although our supreme court in 
Petersen
 had limited the application of an implied warranty of habitability to latent defects, 
Petersen 
did not hold that the scope of the implied warranty of habitability was coextensive with the concept of collateral agreements which do not merge in the deed. 
Mallin,
 93 Ill. App. 3d at 847, 417 N.E.2d at 861.  In any event, in the instant case, whether the alleged defect here was latent or obvious, known or unknown, disclosed or undisclosed is irrelevant and of no import to the issue involved in this case, which is whether the alleged defects existed at the time of possession.

Courts have stated that whether and to what extent merger occurs is also a matter of the parties' intent as evidenced by the language of the instruments and surrounding circumstances. See, 
e.g.
, 
Daniels v. Anderson
, 162 Ill. 2d 47, 642 N.E.2d 128 (1994).
 
 The parties disagree as to how that concept applies here.  In 
Daniels
, the court explained that "[w]hether and to what extent the contract merges into the deed is a matter of the parties' intent 
that the deed constitutes a full performance of the contract
." (Emphasis added.) 
Daniels
, 162 Ill. 2d at 64, 642 N.E.2d at 136.  Thus, whether and to what extent a sales contract merges into a deed is, in fact, the same determination as whether and to what extent the contractual provisions at issue are separate and distinct, and not covered by the conveyance.

The 
Daniels
 court concluded the circumstances there evidenced no merger, since the deed did not mention the disputed provision contained in the contract, namely, the grant of an easement.  As the court in 
Daniels 
explained, "The creation of an easement in a contract is such a separate and independent provision which, 
if not referred to in the deed, is not fulfilled by delivery of the deed and remains in force until performed
. [Citations.]"
 Daniels,
 162 Ill. 2d at 63-

64, 642 N.E.2d at 136.  In other words, the contractual provision survived delivery of the deed.  This analysis applies in the instant case.

The main purpose of the sales contract here was the conveyance of real estate.  The unambiguous language of the sales contract, however, additionally provides that the heating system will be in operating condition at possession.  This express warranty regarding the quality of the heating system, if not referred to in the deed, is "collateral to and independent of the provisions in the subsequent deed."
(footnote: 1)  Such a separate and independent provision is not fulfilled by delivery of the deed and remains in full force until performed.

Defendants also cite 
Lanterman,
 notably the dissenting opinion
, 
to further support their theory that the doctrine of merger bars plaintiffs' claim based upon the fact that plaintiffs inspected the property.  In fact, the court in 
Lanterman
 explained that "[w]hether or not the plaintiffs exercised their contractual right to inspect the premises is of no consequence to the defendants' contractual obligation to provide a heating and air-conditioning system in normal working condition on the date of possession." 
Lanterman
, 294 Ill. App. 3d at 353, 689 N.E.2d 
at 1224.  The points raised in the dissent regarding the contractual provisions in that case, including the "as is" provision, have no relevance here. 

Defendants' have further contended, pursuant to section 2-619 of the Code, presumably section 2-619(a)(9)(735 ILCS 5/2-619(a)(9)(West 1998)), that plaintiffs have "failed to state a claim for breach of warranty *** because the furnace was in operating condition 'at possession,'  
i.e.
, the closing."  The affirmative matter upon which defendants rely consists of an affidavit and the report of an inspection obtained by plaintiffs.  The sum and substance of defendants' argument is that the heating system was "in operating condition at possession."  This ultimate issue - whether defendants performed their contractual obligations or breached the contract,
 i.e.
, whether the operating system was or was not in operating condition at the time of possession - is for the trier of fact, not the court, to determine.

Defendants also argue that plaintiffs made "admissions" that the heating system was in operating condition.  In support of this argument, defendants make two incorrect assertions: (1) that the inspector's opinions as to the heating system constituted admissions, and (2) that the inspector was plaintiffs' agent and his "admissions" are binding upon the plaintiffs.  We find both assertions meritless.  The fact that the inspector did not identify the particular defect plaintiffs now allege was a breach of the express warranty does not mean that the defect did not 
exist
 at possession.  That the inspector suggested a safety inspection be performed by the local gas utility company is irrelevant to the issues here regarding breach of contract.  Defendants' insinuation that this recommendation to have a safety inspection created a duty on the part of the plaintiffs that would excuse the defendants from any defect, in existence at the time of possession, is baseless.

Equally baseless is defendants' assertion that the inspector's statements that "the furnace was tested using normal operating controls and 
functioned
 properly at the time of inspection" (emphasis added) and that "the carbon monoxide levels 
evident on the date of inspection
 were within normal acceptable levels" (emphasis added) constitute admissions that the heating system was in operating condition at possession which are binding upon the plaintiffs.  First, these are opinions, not undisputed facts and certainly not admissions.  The inspector himself stated that the local gas utility company was the final authority.  More importantly, however, how the furnace functioned and what the carbon monoxide levels were at a certain point in time are different issues from the allegations here: that the furnace "
posed a threat
 to health and safety due to a
 risk
 of excessive carbon monoxide accumulation within the residence." (Emphasis added.)   

In their failed attempt to distinguish 
Lanterman
 by arguing the alleged defect here was not latent, as was previously discussed, defendants pointed to the fact that the inspector specifically noted the furnace was "[l]ocated at the basement bathroom utility closet."   If anything, this evidence is actually favorable to plaintiffs' claim that the alleged defect was present at the time plaintiffs took possession since the inspection took place on May 7, 1999, and nothing changed with respect to the location of the furnace between that time and the closing date of July16, 1999.  Whether this alleged defect constitutes a breach of the express warranty, however, is a factual question for the trier of fact.

In conclusion, defendants' express warranty in the contract as to the quality of, among other things, the heating system is a collateral undertaking not fulfilled by the delivery of the deed.  The trial court erroneously applied the doctrine of merger when it granted defendants'  motion to dismiss.  Plaintiffs' complaint is not barred by the merger doctrine and should not have been dismissed.

Reversed and remanded.

CAMPBELL, P.J., and O'BRIEN, J., concur.

FOOTNOTES
1:
The record contains no copy of the deed. Nevertheless
, a deed is an instrument in writing which conveys an interest in land and its main function is to pass a title to land.  I
t is well established that the main purpose of a deed is conveyance, 
i.e.
, to transfer good title. See, 
e.g.
, 
Lanterman v. Edwards,
 294 Ill. App. 3d 350, 353,
 689 N.E.2d 1221, 1224 (1998).  Defendants have not contended that this was not the main purpose of the deed here nor have they shown that the deed referred, in any way, to the contractual provisions at issue.