# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2812

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Plaintiff - Appellee,　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　　v.　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　Western District of Arkansas.
Jack Jepsen; Kris Jepsen; Karen Jepsen　*
Makutenas,　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Defendants - Appellants,　　*

_____

Submitted: April 12, 2001

Filed: October 10, 2001

_____

Before WOLLMAN, Chief Judge, LOKEN, Circuit Judge, and BOGUE,[*] District
　　　　Judge.　　　　　　　　_____

LOKEN, Circuit Judge.

In August 1989, Illinois resident Jack Jepsen conveyed the family's Arkansas vacation home to his children, Kris and Karen. In exchange, Jepsen received a $10,000 down-payment check from each child and an interest-bearing promissory note in the amount of $95,000 secured by a mortgage on the property. In April 1994, the United States assessed a $214,263 tax penalty against Jepsen for failure to pay

_____

[*]The HONORABLE ANDREW W. BOGUE, United States District Judge for the District of South Dakota, sitting by designation.

employment taxes owed by his company, Jepsen of Illinois, Inc. The assessment created a lien in favor of the United States on all of Jepsen's "property and rights to property." 26 U.S.C. §§ 6321, 6322. After reducing the assessment to judgment, the United States commenced this action in August 1998 to foreclose its tax lien against the promissory note and mortgage on the Arkansas property. Following a bench trial, the district court[1] entered a final judgment in favor of the government and ordered a foreclosure sale of the real property. Jepsen appeals, arguing in the alternative that he gave the property to his children in 1989, and that the applicable statute of limitations bars any claim on the promissory note and mortgage. He also objects to the conditional foreclosure remedy granted against the promissory note. We affirm.

## I. Did Jepsen Give the Property to His Children?

By broadly defining the federal tax lien in 26 U.S.C. § 6321, "Congress meant to reach every interest in property that a taxpayer might have." United States v. Nat'l Bank of Commerce, 472 U.S. 713, 719-20 (1985). In applying that statute, "[w]e look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." Drye v. United States, 528 U.S. 49, 58 (1999). Here, Jepsen argues he gave the vacation home to his children in August 1989 and therefore had no interest in that property when the tax lien came into existence in 1994. He concedes that the note and mortgage would be "property" for purposes of § 6321 if the transaction was a sale. Whether the transaction was a gift or a sale is an issue of state law.

---

[1]The HONORABLE H. FRANKLIN WATERS, United States District Judge for the Western District of Arkansas.

Under Arkansas law, proof of a gift requires clear and convincing evidence that the donor delivered the property intending to make an immediate and final gift and to release unconditionally all future dominion and control over the property. See O'Fallon v. O'Fallon ex rel. Ngar, 14 S.W.3d 506, 508 (Ark. 2000). Arkansas law "presumes a gift when the donor registers legal title in a family member's name." Perrin v. Perrin, 656 S.W.2d 245, 248 (Ark. App. 1983); see Festinger v. Kantor, 616 S.W.2d 455, 463-64 (Ark. 1981). The district court nonetheless concluded that the August 1989 transfer was a sale, and that no gift of Jack's property interest in the resulting note and mortgage occurred before the April 1994 tax assessment. We review these findings for clear error. See Bishop v. Bishop, 961 S.W.2d 770, 773 (Ark. App. 1998). The following is a summary of the relevant underlying events.

• Jepsen conveyed the property to Kris and Karen by a warranty deed dated August 15, 1989. Jepsen's lawyer, George Carberry, prepared the transaction documents. Carberry filed the deed and mortgage in Baxter County, Arkansas in October 1989. He then sent the document originals to Robert Bailie, vice president of finance of Jepsen of Illinois, with a letter stating:

> Enclosed are the original, recorded warranty deed and real estate mortgage relative to Jack's sale of the Arkansas real estate to Kris and Karen. These documents should be kept along with Jack's other real estate documents.
>
> I am also returning the original promissory note which Jack should keep.

• In August, Kris and Karen each gave Jepsen a check in the amount of $10,000 as a down payment on the property. The parties knew, however, that the children had insufficient funds to cover the checks, and Jepsen never presented them for payment. In December, Jepsen returned the $10,000 down payment checks to the

children with a letter stating, "I have decided to give you the down payment required on the purchase of the Arkansas property."

• The promissory note bore interest at nine-and-a-half percent, payable annually, with the entire principal due on August 15, 1992. Neither Kris nor Karen made any interest or principal payments on the note, nor did Jepsen ever demand any payment. The original of the note cannot be found; Jack assumes he destroyed it. During discovery, Bailie produced a copy of the note and the other documents Carberry had sent him.

• In April 1995, Kris applied for a bank loan secured in part by the Arkansas property. The bank did a title search and discovered the 1989 mortgage to Jepsen. Kris brought the mortgage to Jepsen's attention, and he released it for no consideration. At about this time, Karen executed a quit claim deed conveying her interest in the property to Kris. Jepsen's release and Karen's quit claim deed were recorded in Baxter County in April 1995.

• At trial, Jepsen testified that he intended the August 1989 transfer to be a gift but left the documentation to Carberry and Bailie. His memory of the details was hazy eleven years later. Kris testified:

> In August of 1989 I wanted to purchase the property from my father. At that time I could not afford to. . . .
>
> Around the time [Jepsen] returned the [$10,000] check to me, he discussed that he was just going to, you know, give me and Karen the property. I think he realized we couldn't afford to buy the property so he decided to give it to us.

Karen and Carberry had no recollection of the 1989 transaction. Bailie testified that he would only have acted at the direction of Jepsen.

On this record, the district court's finding that the August 1989 transaction was not a gift is not clearly erroneous. To prove the conveyance was a gift, Jepsen needed clear and convincing evidence that he intended to make an immediate and final gift *at that time*. Clear and convincing evidence is "evidence by a credible witness whose memory of the facts about which he testifies is distinct, whose narration of the details is exact . . . and whose testimony is so . . . convincing as to enable the fact-finder to come to a clear conviction . . . of the truth of the facts related." Bishop, 961 S.W.2d at 773. Jepsen's memory of the August 1989 transaction was indistinct and inexact, the contemporary documents were all consistent with a sale, and even Kris testified that he intended to purchase the property in August 1989.

Jepsen attempts to rescue his position by arguing that even if the August 15 transaction were a sale, he later changed his mind and gave the property to his children when he returned their down payment checks in December 1989. But as the district court noted, the letter accompanying the returned checks states that Jepsen was giving each child the $10,000 check, not his entire property interest in the note and mortgage. The trial testimony did not provide clear and convincing evidence to the contrary.

Alternatively, Jepsen argues in his reply brief that the promissory note was discharged and his interest in the mortgage extinguished when he destroyed the note. He relies on § 3-604 of the Uniform Commercial Code as adopted in Illinois,[2] which would govern this issue under Arkansas choice-of-law principles. But Jepsen did not argue this theory to the district court, nor did he present clear and convincing evidence that he destroyed the note with the requisite intent to discharge his children's obligation to pay the instrument. In these circumstances, we decline to

---

[2]"A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act, such as . . . destruction, mutilation, or cancellation of the instrument." 810 ILL. COMP. STAT. Ch. § 5/3-604 (Smith-Hurd 2000).

depart from our normal rule that we do not consider issues first raised in a reply brief. See, e.g., United States v. Darden, 70 F.3d 1507, 1549 n.18 (8th Cir. 1995), cert. denied, 517 U.S. 1149 (1996).

Jepsen further argues that his release of the mortgage in April 1995 extinguished the government's right to foreclose its tax lien on this property. The district court concluded that release of the mortgage did not affect the government's pre-existing tax lien, citing cases holding that "once a lien has attached to an interest in property, the lien cannot be extinguished . . . simply by a transfer or conveyance of the interest." United States v. Rodgers, 461 U.S. 677, 691 n.16 (1983). On appeal, Jepsen argues that the government merely acquired Jepsen's right to reinstate the released mortgage under Arkansas law. But the survival of a federal tax lien is a question of federal law, and Jepsen cites no authority for the proposition that a taxpayer may defeat an existing lien by releasing a mortgage. In general, "Congress did not intend that taxpayers have the prerogative to relinquish rights in property in favor of avoiding tax liability." Drye Family 1995 Trust v. United States, 152 F.3d 892, 899 (8th Cir. 1998), aff'd, 528 U.S. 49 (1999).

Finally, citing McKay v. Capital Resources Co., 940 S.W.2d 869 (Ark. 1997), Jepsen argues that the United States may not foreclose on the note and mortgage because Arkansas law requires a creditor either to produce the original promissory note or to comply with the requirements of the Uniform Commercial Code relating to lost, stolen, or destroyed negotiable instruments. See ARK. STAT. ANN. § 4-3-309. But these authorities deal with a creditor suing as holder of the note, not with the enforcement of a federal tax lien. The United States presented convincing evidence as to the terms of the note and the fact that Jepsen was the holder of the note when it was lost or destroyed. Jepsen cites no authority suggesting that this evidence was insufficient to establish a property interest against which the tax lien may be enforced.

## II. The Statute of Limitations Issue.

The United States "acquires by its lien and levy no greater right to the property than the taxpayer himself has at the time the tax lien arises." St. Louis Union Trust Co. v. United States, 617 F.2d 1293, 1301 (8th Cir. 1980). Jepsen argues that the government's claim to enforce the promissory note and mortgage is time-barred because the statute of limitations on claims for payment of the note expired before the government filed this action in August 1998. Applying Arkansas conflict of law principles, the district court determined that Illinois law governs this issue because the note was made in Illinois. See Cooper v. Cherokee Vill. Dev. Co., 364 S.W.2d 158, 161-62 (Ark. 1963). The parties agree that Illinois law applies.

In 1989, when the promissory note was executed, Illinois law provided that "actions on . . . promissory notes . . . shall be commenced within 10 years next after the cause of action accrued." 735 ILL. COMP. STAT. § 5/13-206 (1989). Applying this statute, the district court concluded that Jepsen had the right to enforce the note for the ten years following August 15, 1992, its maturity date. Jepsen argues that the Illinois Uniform Commercial Code was amended on January 1, 1992, to provide a six-year statute of limitations on suits to enforce negotiable instruments such as the promissory note here at issue. See 810 ILL. COMP. STAT. § 5/3-118(a) (1992); Krajcir v. Egidi, 712 N.E.2d 917, 922 (Ill. App. 1999). But the six-year statute was repealed on January 1, 1998, before this action was commenced. See Ill. Pub. Act 90-451, § 10 (1997).

The 1997 statute also amended § 5/13-206 to add rules regarding the accrual of causes of action on promissory notes dated after January 1, 1998, rules taken from the six-year statute being repealed. See Ill. Pub. Act 90-451, § 5. Jepsen argues that these amendments confirm that § 5/13-206 does not apply to the note in this case. We disagree. In our view, the amendments resolved accrual issues for promissory notes dated after January 1, 1998, while leaving existing promissory notes subject to the

earlier version of § 5/13-206, which was carried forward unaltered in the amended law. Thus, the district court properly applied the ten-year statute of limitations in concluding that Jepsen had a right to enforce the promissory note and mortgage when the United States commenced this action to enforce its tax lien on his property.

### III. The Remedy Issue.

The district court entered final judgment for the United States in the amount of $361,908.02, consisting of the amount of the April 1994 assessment, a small lien fee, and interest through June 15, 2000. The judgment further recited that the outstanding balance of the interest-bearing promissory note, and therefore Jepsen's interest as mortgagee in the Arkansas real property, was $252,650.40 as of May 22, 2000. The court ordered the real property sold, with the proceeds to be applied to the costs of sale, any delinquent property taxes, and then the judgment in favor of the United States (the sale has been stayed pending this appeal). The court's judgment then addressed the issue of the promissory note:

> 6. If the proceeds from the sale [of the real property] are insufficient to pay the amount due to the United States herein, then the United States may, in its discretion, request this Court to order the sale of Defendant Jack Jepsen's rights to payment under the promissory note in accord with 28 U.S.C. § 2004.

On appeal, Jepsen challenges paragraph 6 of the final judgment, arguing that it potentially makes Kris and Karen liable for the full amount of the judgment in favor of the United States, rather than the amount due under the promissory note. This issue is speculative, because we do not know if the sale of the real property will leave a deficiency, and it is premature, because the district court has not entered a final order setting the terms for any sale of the promissory note. Appeal of this post-judgment collection issue must therefore await a final or otherwise appealable order concluding the relevant portion of the collection proceedings. See In re Joint E.&S.

-8-

Dists. Asbestos Litig., 22 F.3d 755, 760 (7th Cir. 1994).  Jepsen's further contention that Karen should not be liable on the promissory note because she quit-claimed her interest in the real property to Kris is without merit.

For the foregoing reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.