NOTICE

Decision filed 10/31/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 180346-U

NO. 5-18-0346

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| ARMANDO GUTIERREZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 18-MR-5 |
| | ) | |
| JOHN BALDWIN, Director of Corrections; | ) | |
| JACQUELINE LASHBROOK, Warden; and | ) | |
| WILLIAM SPILLER, KENT BROOKMAN, | ) | |
| and JASON HART, | ) | Honorable |
| | ) | Eugene E. Gross, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the plaintiff forfeited his argument that the circuit court erred in granting the defendants' motion to dismiss by failing to raise the issue or argue it in his opening brief, we affirm the circuit court's judgment.

¶ 2    On January 29, 2018, the plaintiff, Armando Gutierrez, filed a *pro se* petition for a writ of *certiorari* (petition) against defendants, John Baldwin, Director of Corrections, Jacqueline Lashbrook, warden, and Kent Brookman and Jason Hart in the circuit court of Randolph County. On May 29, 2018, the defendants filed a motion to dismiss, which the circuit court granted on June 25, 2018.

¶ 3    On appeal, the plaintiff argues that this court should grant a writ of *certiorari* based on his underlying claims and that the circuit court erred in denying a writ of *mandamus* in a prior action. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5    The plaintiff is currently imprisoned at the Pinckneyville Correctional Center serving a sentence of 40 years for first degree murder. On June 29, 2018, the plaintiff filed a *pro se* petition in the circuit court of Randolph County against the defendants. According to the plaintiff's petition, in August 2015, he was in the custody of the Illinois Department of Corrections (IDOC), incarcerated at the Menard Correctional Center. On August 27, 2015, he was served with an IDOC prison disciplinary report charging him with violating an IDOC rule against "security threat group" activity. The reporting IDOC employee alleged that the plaintiff was an "Overseer" for the Latin Folk gang and, in that position, mediated between the East and West cell house unit coordinators and the Latin Folk institutional leadership staff. The report stated that the position of overseer was created to limit the number of inmates who were aware of the identity of the gang's higher leadership, in accordance with its "Don't Ask, Don't Tell" policy. The report further explained that three "confidential sources," whose names were withheld for the "safety and security of the institution" but who were considered reliable informants "due to the consistency of their statements," stated that the plaintiff held this position.

¶ 6    One week later, on September 3, 2015, the plaintiff appeared for his hearing before a prison adjustment committee consisting of two correctional officers. For various reasons, the plaintiff alleges that the hearing was biased and unfair, not held in accordance with the law, and that he was denied an opportunity to properly prepare for the hearing. After the hearing, the plaintiff was found to have violated the rules and was escorted to the segregation unit.

¶ 7     On September 11, 2015, the plaintiff was served with a written decision that the adjustment committee found him guilty as charged, repeating the allegations from the disciplinary report. The adjustment committee recommended that the plaintiff be given one year in C-Grade status; one year of segregation; one year of commissary restriction; and six months of restriction on contact visits. The warden of Menard approved the findings and recommended discipline. On September 11, 2015, the plaintiff filed an offender's grievance in which he complained, *inter alia*, that the adjustment committee violated IDOC's administrative regulations and procedures, as well as his due process rights, by simply copying the disciplinary report verbatim rather than explaining its decision. As to his requested relief, the plaintiff requested expungement of the disciplinary report, a transfer to a medium security prison, $100 for every day that he had spent in segregation, and a soy-free diet.

¶ 8     On October 8, 2015, the plaintiff mailed five affidavits to the grievance officer to supplement his original grievance. The first affidavit was that of the plaintiff himself and the remaining affidavits were from four other inmates who were in segregation with him. Read together, the affidavits attested that three of the four inmates had been placed in segregation pending an investigation about a week before the plaintiff was charged with participating in gang activity, and that the investigation resulted in similar charges against them on the same date that he was charged; and that another inmate was sent to segregation under similar charges a few weeks later. The affidavits also asserted that each inmate: (1) learned of the charges against the others "upon arrival" in segregation or shortly afterward, (2) was not acquainted with any of the others before meeting them in segregation, and (3) did not hold a position in the Latin Folks organization or know any person who did.

3

¶ 9    On November 30, 2015, the grievance officer entered his report recommending the denial of the plaintiff's grievance. The report stated that the grievance officer had reviewed the disciplinary report, the "ticket summary," and the hearing procedures, and had contacted both the adjustment committee and the investigations and intelligence unit, and, as a result, was satisfied that the guilty finding was "based on a thorough investigation." Further, the report addressed the plaintiff's requests regarding transfer, monetary compensation, and his diet. On December 3, 2015, the warden concurred with the findings and recommendations of the report.

¶ 10    In May 2016, the Director of IDOC issued an order referring the decision back to the adjustment committee based on a recommendation from the Administrative Review Board (ARB). The Director instructed the committee to "rewrite" its decision "to address the reliability of the confidential sources and provide additional information to substantiate" the finding of the plaintiff's guilt.

¶ 11    In November 2016, the adjustment committee rewrote its decision concerning the plaintiff's discipline. The new decision retained the language from the original disciplinary report but added two new paragraphs. The first paragraph stated that the plaintiff was identified as a Latin Folks overseer for the East and West cell houses "by multiple confidential sources"; that identification of those sources was being withheld for reasons affecting the safety and security of the institution; and that the sources were "deemed reliable due [to] the consistency of their statements." The second paragraph provided the language of the IDOC regulation against gang activity that the plaintiff was found to have violated. The new decision was approved by the warden on November 17, 2016, and served upon the plaintiff on November 28, 2016.

¶ 12    Sometime in November 2016, prior to being served with the new decision, the plaintiff filed a complaint for *mandamus* relief in the circuit court of Randolph County, case No. 16-MR-

4

123. That matter was resolved on May 15, 2017, when the circuit court granted the defendants' motion to dismiss. The defendant filed a notice of appeal in that matter, which was dismissed for want of prosecution on October 13, 2017.

¶ 13    On August 24, 2017, the ARB and the Director finalized the denial of the plaintiff's grievance, explaining that in the rewritten decision of November 2016, the adjustment committee had included additional information on the reliability of the confidential sources and additional information to substantiate the plaintiff's guilt. The ARB and the Director further stated that, based on a total review of all available information and a check for compliance with the procedural due process safeguards of the IDOC's regulations, they were reasonably satisfied that the plaintiff committed the offense with which he was charged. Accordingly, it was recommended that the grievance be denied.

¶ 14    On January 8, 2018, the plaintiff filed a *pro se* motion to proceed *in forma pauperis* and appointment of counsel with a copy of his current IDOC trust fund account attached. On the same date, the circuit court entered an order granting the plaintiff's motion with the requirement that he pay a filing fee of $2.75 within 60 days. On January 29, 2018, the plaintiff paid the required filing fee and filed a *pro se* complaint for common law writ of *certiorari* requesting the circuit court review the propriety of a prison disciplinary report and its related penalties against the defendants. The plaintiff also filed a brief in support of the complaint attaching numerous documents relevant to his claims.

¶ 15    In his complaint, the plaintiff named John R. Baldwin, Director of IDOC, Jacqueline Lashbrook, the warden of the Menard Correctional Center, William A. Spiller, staff investigator, and Kent E. Brookman and Jason N. Hart, members of the adjustment committee, as defendants. In general, the plaintiff claimed that the adjustment committee did not follow the IDOC regulations

5

governing the disciplinary procedure and that its failure to do so violated his right to due process under both state and federal law. The plaintiff requested the circuit court to grant *certiorari* and dismiss the institutional report and guilty finding against him, as well as a claim for monetary damages for the days he spent in segregation.

¶ 16    On May 29, 2018, the defendants jointly filed a motion to dismiss pursuant to section 2-619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2016)) and a memorandum in support thereof. According to the defendants, the plaintiff was not entitled to relief because: (1) he did not lose good conduct credit, so he was not entitled to due process protections, and the time he spent in and the conditions of segregation did not create a significant and atypical hardship; (2) he received all due process protections to which he was entitled; and (3) his claim for monetary damages was barred by sovereign immunity. On June 25, 2018, the plaintiff filed a response to the defendants' motion to dismiss and memorandum in support thereof. The plaintiff argued that: (1) the charges were not verified or substantiated because the adjustment committee simply believed the officer who wrote the report and relied on evidence from three confidential informants that was rejected in the case of another inmate; (2) the chairman of the committee's own words showed that he was biased against inmates alleged to be gang members; and (3) segregation was a deprivation of a liberty interest under *Chavis v. Rowe*, 643 F.2d 1281, 1287 (7th Cir. 1981). The plaintiff stated, however, that he was no longer "contesting that his claim for money damages is barred."

¶ 17    On June 25, 2018, the circuit court entered its order granting the defendants' motion to dismiss stating: "Plaintiff seeks a Common Law Writ of *Certiorari* for disciplinary action taken against him in 2015. The same incident was the subject matter of Randolph County Case 16-MR-123 seeking *mandamus* relief which was dismissed on May 15, 2017." The plaintiff filed a notice

6

of appeal on July 5, 2018, indicating that he was appealing from the circuit court's June 25, 2018, order. For the reasons that follow, we affirm the circuit court's judgment.

¶ 18                                      II. ANALYSIS

¶ 19    On appeal, the plaintiff raises three issues for this court's review: (1) that the Menard Correctional Center's adjustment committee did not comply with the IDOC Director's order to address the reliability of the confidential sources or failed to provide additional information to substantiate the committees finding of guilt; (2) that the Menard Correctional Center's adjustment committee failed to adhere to the law regarding prison disciplinary standards and requirements before the findings of guilt or innocence; and (3) that the circuit court erred by dismissing the plaintiff's original complaint for *mandamus*. The defendants argue, *inter alia*, that the plaintiff forfeited review of the circuit court's dismissal order of June 25, 2018, where he did not challenge the circuit court's application of the doctrine of *res judicata* in his opening brief on appeal.

¶ 20    A common law writ of *certiorari* is a general method for obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law (ARL) and provides for no other form of review. *Smith v. Department of Public Aid*, 67 Ill. 2d 529, 541 (1977). Because the statutes governing prison disciplinary procedures, see sections 4-8-7 and 3-8-8 of the Unified Code of Corrections (730 ILCS 5/3-8-7, 3-8-8 (West 2016)), neither adopt the ARL nor provide for any other method of judicial review, *certiorari* review of prison discipline is generally appropriate. *Oliver v. Pierce*, 2012 IL App (4th) 110005, ¶ 12. The standard of review under a common law writ of *certiorari* agency's exercise of its discretion is arbitrary and capricious, or the agency's action is against the manifest weight of the evidence. *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996).

7

¶ 21    The purpose of the writ of *certiorari* is to bring the entire record of the inferior tribunal before the circuit court to determine, from the record alone, whether that tribunal proceeded according to law. *Reichert v. Court of Claims*, 203 Ill. 2d 257, 260 (2003). Review is limited to consideration of the actions of the administrative body. *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 427-28 (1990).

¶ 22    Here, however, the defendants moved to dismiss the plaintiff's petition under section 2-619 of the Code (735 ILCS 5/2-619 (West 2016)) prior to the circuit court's review of the administrative action. While the defendants did not argue in their motion to dismiss that the plaintiff's claims were barred by *res judicata*, the circuit court nonetheless entered an order of dismissal on that ground. Our standard of review of a motion to dismiss under section 2-619 of the Code is *de novo*. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 583 (2000). A section 2-619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that appear on the face of the complaint or are established by external submissions that act to defeat the claim. *Id.*

¶ 23    Here, we agree with the State that the plaintiff has failed, on appeal, to challenge the circuit court's ruling on his motion to dismiss. The plaintiff failed to argue that the basis for the circuit court's ruling was improper, and instead addressed the merits of his claims of error in the administrative process, for which no hearing was held, and no ruling was made in the lower court.

¶ 24    Illinois Supreme Court Rule 341(h)(7) sets out the requirements for appellants' briefs. *Vancura v. Katris*, 238 Ill. 2d 352, 369 (2010). The rule lists the sections of the brief that shall be included, as well as requirements for each section. *Id.* With respect to arguments, the rule states that the briefs shall contain:

"Argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 25 Our supreme court has repeatedly held that the failure to argue a point in the appellant's opening brief results in forfeiture of the issue. *Vancura*, 238 Ill. 2d at 369. Both argument and citation to relevant authority are required. *Id.* An issue that is merely listed or included in a vague allegation of error is not "argued" and will not satisfy the requirements of the rule. *Id.* A reviewing court is entitled to the benefit of clearly defined issues with pertinent authority cited and a cohesive legal argument. *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 5. The appellate court is not a depository in which an appellant may dump the entire matter of argument and research. *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986). Further, a *pro se* litigant must comply with the same rules and is held to the same standard as licensed attorneys. *Holtzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 70.

¶ 26 A liberal review of the plaintiff's opening brief reveals that he failed to raise any challenge to the June 25, 2018, order dismissing his petition. The plaintiff does not argue in his opening brief that the circuit court's order, finding that his claim for a writ of *certiorari* was barred by the doctrine of *res judicata*, was entered in error. The only procedural error that the plaintiff alleges the circuit court made is that it erred in dismissing a prior *mandamus* claim, presumably in case No. 16-MR-123, over which we have no jurisdiction. Neither in his opening brief, nor his reply brief, does the plaintiff argue that the circuit court erred in dismissing his complaint for a writ of *certiorari* where it erred in its application of the doctrine of *res judicata*. Because the plaintiff's opening brief provided no argument regarding the reason for the circuit court's dismissal of his

9

petition, we find the issue is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (arguments not raised in an opening brief "are forfeited").

¶ 27                                    III. CONCLUSION

¶ 28    For the foregoing reasons, we affirm the circuit court's judgment.

¶ 29    Affirmed.